**UNITED STATES of America, Plaintiff,**

v.

**Jessie AILSWORTH, Jr., a/k/a "J.C.".**

**No. 94–40017–01–SAC.**

United States District Court,
D. Kansas.

Nov. 18, 1996.

Joseph D. Johnson, Joseph D. Johnson, Chtd., Topeka, KS, for Jessie Ailsworth, Jr.

Gregory G. Hough, Office of United States Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The long history preceding the trial of the defendant, Jesse Ailsworth, is contained in this court's May 7, 1996 memorandum and order. *See United States v. Ailsworth,* 927 F.Supp. 1438 (D.Kan.1996). Prior to trial, all of Ailsworth's codefendants entered guilty pleas. When the second superseding indictment was originally filed, it contained forty-five counts. Before trial, eight counts of the second superseding indictment were dismissed. Specifically, Counts 34, 37 and 40 through 45 were dismissed. Ailsworth was charged in each of the remaining thirty-seven counts.

Selection of the jury commenced on July 8, 1996. The presentation of evidence commenced on July 22, 1996. On August 8, 1996, the government rested its case-in-chief. The court denied the defendant's motion for judgment of acquittal. The defendant's case commenced and concluded on August 7, 1996. The defendant did not testify. The court denied the defendant's motion for judgment of acquittal at the close of evidence.

Although the court's instructions to the jury essentially tracked Tenth Circuit precedent regarding the elements of a charge of conspiracy under 21 U.S.C. § 846, the jury had substantial difficulty understanding what is necessary to prove conspiracy. This conclusion is evidenced in part by the number of questions asked by the jury and length of their deliberations. In response to the jury's numerous questions, the court initially simply instructed the jury to reread the instructions.

Unfortunately that response did not allay the jury's concerns. The jury repeatedly asked additional questions regarding Count 1, the count charging conspiracy.[1] Often over the defendant's objection, the court endeavored to specifically answer the jury's questions rather than simply refer them to back to the instructions which gave rise to their questions in the first instance.

On August 13, 1996, the jury asked the following question: "On those counts where we do not have a unanimous decision, ie not guilty or guilty, how do we complete the verdict form?". In response, the court provided the jury with the following partial verdict instruction: .

(1) Members of the jury, you do not have to reach unanimous agreement on all the charges before returning a verdict on some of them. If you have reached unanimous agreement on some of the charges, you may return a verdict on those charges, and then continue deliberating on the others. You do not have to do this, but you can if you wish.

(2) If you do choose to return a verdict on some of the charges now, that verdict will be final. You will not be able to change your minds about it later on.

(3) Your other option is to wait until the end of your deliberations, and return all your verdicts then. The choice is yours.

Jury Exhibit # 16.

On August 13, 1996, after four days of deliberation, the jury returned a partial verdict finding the defendant guilty on counts 6, 7, 9 and 28 and not guilty on counts 2, 5, 8, 13, 14, 15, 16, 17, 18, 20, 21, 24, 25, 29, 30, 31, 32, 33, 35, 36, 38 and 39.[2] Following the court's receipt of the jury's partial verdict the jury indicated that further deliberations

---

1. The government requested and received a *Pinkerton* instruction. *See United States v. Brewer,* 983 F.2d 181, 185 (10th Cir.) ("A conspiracy participant is legally liable for all reasonably foreseeable acts of his or her coconspirators in furtherance of the conspiracy.") (citing *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946)), *cert. denied,* 508 U.S. 913, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993). Therefore the jury's verdict on Count 1 potentially implicated their verdict on all of the

other counts charged in the second superseding indictment.

2. Any contention by the defendant that the partial verdict instruction was improper is without merit. *See United States v. McKinney,* 822 F.2d 946, 950 (10th Cir.1987) (approving the use of partial verdict) (citing *United States v. Ross,* 626 F.2d 77 (9th Cir.1980)).

would not be fruitful in reaching a unanimous verdict on the undecided counts. Over the defendant's objection, the court then gave the jury an *Allen*[3] instruction. *See United States v. Reed,* 61 F.3d 803 (10th Cir.1995); *United States v. Burch,* 928 F.Supp. 1066 (D.Kan.1996) (over defendant's objection, this court gives the jury an *Allen* instruction approved in *Reed*). On August 15, 1996, the jury returned a verdict on 9 of the 11 remaining counts. The jury found Ailsworth guilty on counts 1, 26 and 27 and not guilty on counts 4, 10, 11, 19, 22 and 23. As to count 1, which charged Ailsworth with conspiring with his former codefendants and other persons unknown to the grand jury, the jury not only checked "guilty" but added in handwriting an additional sentence to the verdict form. In pertinent part, the jury's verdict was as follows:

> 1. Count 1 of the second superseding indictment charges Jessie Ailsworth, Jr., with conspiracy to possess with the intent to distribute a controlled substance.
>
> Do you find the defendant, Jesse Ailsworth, Jr., not guilty or guilty as to Count 1 of the second superseding indictment?
>
> (Check one)   Not Guilty  _____
>                      Guilty  ____X____
>
> "As related to counts # 26, 27 and 28
>
> on 11/19/93 only"

The jury was unable to reach a unanimous verdict on counts 3 and 12. The jury was polled, each member of the jury agreed that "was and is your verdict." Over the defendant's objection, the court received the jury's verdict on all of the counts upon which they could return a unanimous verdict, including count 1.[4]

After the jury indicated that further deliberations would not result in a unanimous verdict on the remaining counts, and after considering the arguments of counsel, the court declared a mistrial on counts 3 and 12 because of "manifest necessity" under the rule of *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). *See United States v. Simpson,* 94 F.3d 1373 (10th Cir. 1996) (failure of jury to agree on a verdict is an instance of "manifest necessity" which permits a trial judge to terminate the first trial and retry the defendant), *cert. denied,* —— U.S. ——, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996).

On September 4, 1996, the government filed a "Motion to Dismiss Counts 3 and 12" (Dk. 741). The government sought dismissal of those counts of the second superseding indictment without prejudice. On October 2, 1996, the court entered a memorandum and order granting the government's motion to dismiss Counts 3 and 12 without prejudice. *See United States v. Ailsworth,* 1996 WL 699710 (D.Kan. Oct. 2, 1996).

This case comes before the court upon the following post-trial motions filed by Ailsworth:

1. "Motion to Contact Jurors" (Dk. 728); and

2. "Motion for Judgment of Acquittal." (Dk. 725).

The government has filed responses to each motion. *See* Dk. 730 and Dk. 746.

**Overview**

The attorneys' conduct in this trial was marked by repeated objections requiring a multitude of conferences outside the presence of the jury. A path was worn by counsel approaching the bench. Almost as much time was spent arguing about the presentation of evidence as was the presentation of evidence itself. Whether the majority of these conferences were necessary is doubtful. Zealous representation of one's client rarely requires an attorney to invoke a strategy of offering any evidence, no matter how little the relevance or how obvious the prejudice. Conversely, objecting at every possible opportunity is rarely an appropriate or useful trial strategy. At times throughout the trial,

---

3. "The so-called 'Allen' or 'dynamite' charge derives its name from *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)." *United States v. Smith,* 857 F.2d 682, 683 (10th Cir.1988).

4. As he does in his motion for judgment of acquittal, Ailsworth argued to the court prior to receipt of the verdict, that the jury's additional comment was the equivalent of a not guilty verdict.

neither the government's attorney nor the defendant's counsel exhibited a great deal of restraint in the representation of their respective clients. Because counsel could not limit their respective evidentiary objections to appropriate, succinct remarks, the court was reluctantly compelled to instruct counsel to only advance objections corresponding to the applicable number of the Federal Rule of Evidence. Frankly, the court was disappointed with counsels' inability to resolve innumerable matters without judicial intervention. In the future, the court trusts that counsel will exhibit more reasonable restraint in the representation of their clients.

Despite these observations, the court is convinced that the defendant received a fair trial and that nothing he alleges entitles him to relief from the jury's verdict.

### Matters Decided During Trial

Prior to and during trial the court made several evidentiary rulings. Because of the extraordinary number of delays occasioned by the parties' numerous objections, as well as several events outside the party's control, in the interests of expediency, the court often admitted or excluded evidence without substantial elaboration. As indicated to the parties during trial, the court has drafted this memorandum and order in part to more fully explain several of the rulings made during trial.

### Admissibility of Johnny Evans' Statements

Prior to trial, Ailsworth filed a motion in limine to exclude from evidence all of the statements of Johnny Evans, the government's confidential informant (CI) in this case, as hearsay. Evans had a lengthy criminal record and a habit of using illegal drugs including crack cocaine. To avoid criminal prosecutions and other consequences of his prior illegal acts, Evans agreed to act as a confidential informant. In his role as CI, Evans introduced Agent Hernandez of the Agriculture Department to Ailsworth and his coconspirators. Agent Hernandez posed as the "food stamp man," a purveyor of ill-gotten food stamps who would exchange food stamps for virtually anything of value but with a penchant for crack cocaine. Evans participated in several transactions which involved Ailsworth directly or indirectly. Prior to trial, Evans died of cancer while in jail for a bank robbery which occurred after he acted as a CI in this case. Evans was therefore unavailable to testify at trial.

As he personally participated in several illegal drug transactions, Evans' statements were captured on several of the videotapes and audiotapes introduced at trial. In addition, after Evans participated in a drug trafficking transaction, he would be debriefed by Agent Hernandez. Agent Hernandez would then reduce those statements to writing, review them with Evans and at some subsequent point in time Evans would review the typed version of his statements and would then sign the statements, indicating that they were accurate.

Over the defendant's hearsay and confrontation clause objection, the court admitted the audiotapes containing Evans' statements.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.Evid. 801(c). Statements of the defendant himself and coconspirator statements made during the course and in furtherance of the conspiracy are admissions by a party opponent, each excluded from the definition of hearsay. *See* Fed.R.Evid. 801(d)(2)(A) and (E). Therefore, Ailsworth cannot object to the admissibility of his own statements on the grounds of hearsay. Similarly, the statements of Ailsworth's coconspirators satisfying the requirements of Rule 801(d)(2)(E) are not hearsay.

### Admissibility of Evans' Recorded Statements

The government contended that Evans' statements captured on audiotape and videotape were not going to be offered to prove the truth of the matter asserted, but instead "to establish that the statements were made and to establish the conspiracy." In the alternative, the government contended that Evans' statements are admissible as coconspirators' statements under Rule 801(d)(2)(E). Ailsworth contended that Evans' statements were offered to prove the

truth of the matter asserted and did not fall within a recognized exception to hearsay.

■ To the extent that Evans' statements were offered only for "context" and not for the truth of the matter asserted, they are not hearsay. *See United States v. de la Cruz–Paulino*, 61 F.3d 986, 996 n. 8 (1st Cir.1995). In *United States v. Sorrentino*, 72 F.3d 294 (2nd Cir.1995), the defendant argued that the district court erred by admitting audiotapes recording conversations between himself and the government's confidential informant. The Second Circuit disagreed:

> Sorrentino's statements are not hearsay because they are his own statements and were offered against him. *See* Fed. R.Evid. 801(d)(2). The statements of the CI were not offered to prove the truth of the matters asserted but only to render what Sorrentino said in these conversations. There was thus no admission of hearsay evidence.

72 F.2d at 298. Similarly, in *United States v. Tangeman*, 30 F.3d 950 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994), the defendant argued that the statements of a deceased CI captured on audiotapes were inadmissible hearsay. The court of appeals agreed with the district court that the CI's statements were admissible to provide the context for the defendant's statements and not to prove the truth of the matters asserted therein. 30 F.3d at 952.

As to the government's argument that Evans' own statements are not hearsay because they are coconspirators' statements, some courts have held that the statements of a confidential informant with a coconspirator are admissible under Rule 801(d)(2)(E). *See, e.g., United States v. Smith*, 918 F.2d 1551, 1558 (11th Cir.1990) (videotaped conversation between a codefendant and a government informant admissible under Rule 801(d)(2)(E)).[5] Other courts have reached an opposite result, concluding that the statements of a coconspirator turned government informant are not admissible under Rule 801(d)(2)(E). *See United States v. Darden*,

70 F.3d 1507, 1530 (8th Cir.1995) (tape recorded statements of a government informant were not admissible under Rule 801(d)(2)(E) as he was not a coconspirator at the time the statements were made and therefore were not made in furtherance of the conspiracy), —— U.S. ——, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996).

In its brief, the government cites only cases from the Sixth, Eighth and Eleventh Circuits in support of its contention that the statements of a conspirator-turned-government informant may satisfy the requirements of Rule 801(d)(2)(E). In its independent research of the issue, the court found no definitive statement on the issue from the Tenth Circuit, although two cases seemingly suggest that the taped conversations between a coconspirator and government informant or cooperating witness are admissible under Rule 801(d)(2)(E). *See United States v. Lopez–Gutierrez*, 83 F.3d 1235, 1241 (10th Cir. 1996) (over defendant's hearsay objection, district court properly admitted tape recorded statements of coconspirator and confidential informant under Rule 801(d)(2)(E)); *United States v. Smith*, 833 F.2d 213 (10th Cir.1987) (district court properly admitted four tape recorded conversations of defendant's wife and a government informant under Rule 801(d)(2)(E)). These cases beg the question of how a coconspirator-turned-government-informant is still a "conspirator" within the meaning of Rule 801(d)(2)(E).

In *United States v. Williamson*, 53 F.3d 1500, 1517 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 218, 133 L.Ed.2d 149 (1996), the defendant, Dryden, argued that the district court committed reversible error in admitting under Rule 801(d)(2)(E), two tape recorded conversations between Williamson (a coconspirator) and Myles, a person the government alleged to have been a coconspirator of both Williamson and Dryden. Although the Tenth Circuit agreed that Dryden was not a coconspirator, the Tenth Circuit found no reversible error in admitting the taped conversations:

> for the purpose of placing a conspirator's comments in context for the jury." 918 F.2d at 1559.

---

**5.** The Eleventh Circuit "alternatively has recognized that an informant's statements are admissible not for the truth of the matter asserted, but

It is settled law in this circuit that " '[p]roof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy.' " *United States v. Fox,* 902 F.2d 1508, 1514 (10th Cir.) (quoting *United States v. McIntyre,* 836 F.2d 467, 471 (10th Cir.1987)), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). "Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy." *Fox,* 902 F.2d at 1514; accord [*United States v.*] *Jones,* 44 F.3d [860] at 866 [(10th Cir.1995)] (citing cases). In the absence of some evidence demonstrating that Mr. Myles knowingly and voluntarily joined the conspiracy and accepted the conspiratorial objectives, he cannot be transformed into a coconspirator merely because he bought drugs from a known member of a drug conspiracy. Because the record is devoid of any evidence tending to support an inference that Mr. Myles was a member of Mr. Marshall's drug conspiracy, it necessarily follows that the district court's finding that Mr. Myles was a coconspirator was clearly erroneous.

Although the district court erred in finding Mr. Myles was a member of the conspiracy, this error does not automatically warrant reversal in this case. In fact, a review of Rule 801(d)(2)(E) and the case law interpreting it, demonstrates that the rule does not embody a requirement that the statement in question "be made by a coconspirator to a coconspirator." *United States v. Thompson,* 976 F.2d 666, 670 (11th Cir.1992) (emphasis added), *cert. denied,* [509] U.S. [910], 113 S.Ct. 3010, 125 L.Ed.2d 701 (1993). Perhaps conspicuous by its absence is any requirement under Rule 801(d)(2)(E) that before coconspirator statements may be admitted, the party to whom the statements were made (*i.e.,* the witness who will testify in court as to the out-of-court statements made by the declarant) must be a member of the conspiracy. Rule 801(d)(2)(E) only requires that the declarant (*i.e.,* Ms. Williamson) and the defendant (*i.e.,* the coconspirator on trial against whom the statement is being offered, who, in this case, is Mr. Dryden) be

members of the conspiracy. Relying on this principle, the government asserts it is irrelevant whether the party to whom the statements are made (i.e., Mr. Myles) is a coconspirator as long as the declarant and the defendant are coconspirators. In support of this proposition, the government relies heavily on *United States v. Mealy,* 851 F.2d 890 (7th Cir.1988).

In *Mealy,* the Seventh Circuit held "the fact that one party to a conversation [is] a government informant does not preclude the admission of the conspirator's statements under Rule 801(d)(2)(E)." *Mealy,* 851 F.2d at 901 (emphasis added). We emphasize the italicized language to highlight the fact that the statements of the witness (the person to whom the out-of-court statements were made) are not admissible under this rule, but only the statements of the declarant/coconspirator that were made to the witness. The Seventh Circuit has continued to adhere to this holding of *Mealy* in subsequent decisions. *See United States v. Mahkimetas,* 991 F.2d 379, 383 (7th Cir.1993); *United States v. Robinson,* 956 F.2d 1388, 1394 (7th Cir.), *cert. denied,* [506] U.S. [1020], 113 S.Ct. 654, 121 L.Ed.2d 581 (1992); *see also United States v. Messino,* 855 F.Supp. 973, 977 (N.D.Ill.1994) (following *Mealy* ).

We agree with the reasoning and the analysis articulated by the Seventh Circuit in *Mealy* and its progeny, and we now explicitly hold "that the fact that one party to a conversation is a government agent or informer does not of itself preclude the admission of statements by the other party—if he or she is a member of a conspiracy—under Rule 801(d)(2)(E)." *Mahkimetas,* 991 F.2d at 383 (citations omitted). Stated alternatively, in deciding whether statements are admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were "made by" a member of the conspiracy, and not on whether the statements were "made to" a member of the conspiracy. Applying these principles to this case, we conclude that although the district court erred in finding that Mr. Myles was a coconspirator, that error was harmless because it in no way

affects the admissibility of these statements under Rule 801(d)(2)(E) because whether Mr. Myles was a coconspirator is irrelevant. A fortiori, this error could not, and did not, have a substantial influence on the outcome of the trial. *See Jones,* 44 F.3d at 873. This conclusion flows from the undisputed facts that the declarant of the statements, Ms. Williamson, and the defendant against whom the statements are offered, Mr. Dryden, were both members of the conspiracy. Under Rule 801(d)(2)(E), this is sufficient to establish this aspect of the foundational requirement for the admission of this evidence.

53 F.3d at 1518–1520.

Based upon this discussion in *Williamson,* it appears that Evans' own statements would only be admissible under Rule 801(d)(2)(E) when he was a member of the conspiracy and not when he was acting as a government informant.

Ultimately, the point is academic in regard to Evans' recorded statements. Because a proper foundation for the tapes was laid, the court admitted the recorded statements of Evans insofar as they provided a context for the statements of Ailsworth or his coconspirators.

### Evans' Written Statements

Over the government's objection, the court excluded from evidence Evans' written statements. The government argued that the statements were admissible under Fed. R.Evid. 803(24) or 804(b)(5), the so-called "catch-all" or residual exceptions.

In its arguments to the court, the government erroneously conceded that Evans' unavailability precluded his statements from qualifying as a present sense impression under Fed.R.Evid. 803(1). As the comments to Fed.R.Evid. 804 explain, the admissibility of statements under the exceptions to hearsay listed in Rule 803 do not depend on the availability of the declarant:

> Rule 803, supra, is based upon the assumption that a hearsay statement falling within one of its exceptions possesses qualities which justify the conclusion that whether the declarant is available or unavailable is not a relevant factor in determining admis-

sibility. The instant rule proceeds upon a different theory: hearsay which admittedly is not equal in quality to testimony of the declarant on the stand may nevertheless be admitted if the declarant is unavailable and if his statement meets a specified standard.

Fed.R.Evid. 804, Advisory Committee Notes, 1972 Proposed Rules, Note to Subdivision (b).

■ Even if the government had argued that Evans' written statements qualified under 803(1), the court would nevertheless have excluded them under that exception. "The present-sense impression exception applies only to a statement, describing an event, that was 'made while the declarant was perceiving the event ... or immediately thereafter.'" *Hynes v. Coughlin, III,* 79 F.3d 285, 294 (2nd Cir.1996) (quoting Fed.R.Evid. 803(1)). *See* Fed.R.Evid. 803(1) 1972 Advisory Note (this exception requires "substantial contemporaneity of event and statement"); *Kelly v. Municipal Courts of Marion County, Indiana,* 97 F.3d 902 (7th Cir.1996); *Bennett v. National Transportation Safety Board,* 66 F.3d 1130, 1137 (10th Cir.1995).

To some extent the evidence contained in Evans' written statements was cumulative to the evidence contained on the audio and video tapes and was excluded on that basis alone. The portions of those written statements which the government might otherwise have offered encountered insurmountable hearsay problems. Having concluded that Evans' written statements did not satisfy 803(1), and having concluded that the Evans' statements did not otherwise satisfy any other hearsay exception, the court excluded those written statements as hearsay.

■ Evans' written statements did not satisfy the requirements of the residual exception.

> The residual exception to the hearsay rule makes admissible [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the

point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. Fed.R.Evid. 803(24). Courts must use caution when admitting evidence under Rule 803(24), for an expansive interpretation of the residual exception would threaten to swallow the entirety of the hearsay rule. As this court has warned, Rule 803(24) should be used only "in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice." *United States v. Farley,* 992 F.2d 1122, 1126 (10th Cir.1993).

*United States v. Tome,* 61 F.3d 1446, 1451 (10th Cir.1995); *see New England Mutual Life Ins. Co. v. Anderson,* 888 F.2d 646 (10th Cir.1989) (trial court did not abuse its discretion in excluding newspaper article based upon its finding that the article did not have the "equivalent circumstantial guarantees of trustworthiness" necessary to support admission of the article under 804(b)(5) or that admission of the article without an opportunity to cross-examine its author would have served the interests of justice). In short, Evans' uncorroborated accounts of events in those written statements generally did not carry guarantees of trustworthiness, nor were the interests of justice served by their admission.

### Admission of Coconspirator's Statements

Under Fed.R.Evid. 801(d)(2)(E), a statement is not hearsay if the statement is offered against a party and is "a statement made by a coconspirator of a party during the course and in furtherance of the conspiracy." A coconspirator's statement is admissible under Rule 801(d)(2)(E) if the trial court determines:

(1) a conspiracy is proven by a preponderance of the evidence;

(2) the declarant and the defendant were both members of the conspiracy; and

(3) the statements were made in the course and furtherance of the conspiracy.

*United States v. Powell,* 982 F.2d 1422, 1432 (10th Cir.1992), 508 U.S. 917, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993).

In deciding whether the prerequisites for admission of the coconspirator's out-of-court statement have been satisfied, the court may consider the out-of-court statement sought to be admitted in addition to the independent evidence presented. *Id.; United States v. Johnson,* 911 F.2d 1394, 1403 (10th Cir.1990), *cert. denied,* 498 U.S. 1050, 111 S.Ct. 761, 112 L.Ed.2d 781 (1991).

■ The party seeking to introduce hearsay testimony under Rule 801(d)(2)(E) bears the burden of proving the relevant facts by a preponderance of the evidence. *Bourjaily v. United States,* 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987); *United States v. Perez,* 989 F.2d 1574, 1580 (10th Cir.1993) (citing *Bourjaily* ).

During the trial the court concluded that the government had proven by a preponderance of the evidence that Ailsworth was a member of a conspiracy to possess with the intent to distribute crack cocaine and that the members of that conspiracy included Undra Mock, Calvin Conway, Terence Douglas, Arnett Rice, George Stewart, Kenneth Torain and other persons not named in the second superseding indictment. The court also concluded that the statements made by those persons during the conspiracy were in the course and in furtherance of the conspiracy or were otherwise excluded from the definition of hearsay.

### Admission of 404(b) Evidence

■ Over Ailsworth's objection, the court admitted pursuant to Fed.R.Evid. 404(b) a prior state drug trafficking conviction. Under the criteria established by the Tenth Circuit, the court concluded that it was appropriate for the government to introduce evidence of Ailsworth's prior drug trafficking conviction in its case-in-chief.

### Tenth Circuit Standards

Although evidence of other acts is not admissible to prove a defendant's predisposition to commit the crime charged, evidence of other crimes, wrongs or acts is admissible for

limited purposes and only when certain prerequisites are satisfied. Fed.R.Evid. 404(b) provides:

> **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The principle behind the Rule is that evidence of crimes or acts other than those charged should not be admissible merely to show that the defendant, having committed other bad acts, has a propensity toward crime or bad character." *United States v. Torres*, 977 F.2d 321, 325 (7th Cir.1992); *see United States v. Gilliland*, 586 F.2d 1384, 1389 (10th Cir.1978) ("Showing that a man is generally bad has never been under our system allowable. The defendant has a right to be tried on the truth of the specific charge contained in the indictment.").

"It is well settled that the rule is one of inclusion which admits evidence of other crimes relevant to an issue in a trial, unless the evidence is introduced for an impermissible purpose or undue prejudice is shown." *United States v. Cuch*, 842 F.2d 1173, 1176 (1988); *see United States v. Yellow*, 18 F.3d 1438, 1441 (8th Cir.1994) ("This circuit views Rule 404(b) as one of inclusion, permitting admission of other crimes, wrongs, or bad acts material to an issue at trial, unless the evidence tends to prove only the defendant's criminal disposition.") (quoting *United States v. Estabrook*, 774 F.2d 284, 287 (8th Cir. 1985)).

The Tenth Circuit "has developed rigorous criteria for admitting evidence of other crimes, wrongs, or acts pursuant to Rule 404(b)." *United States v. Doran*, 882 F.2d 1511, 1523 (10th Cir.1989). Whether evidence is admissible under Fed.R.Evid. 404(b) is committed to the sound discretion of the district court. *United States v. Harrison*, 942 F.2d 751, 759 (10th Cir.1991). In determining the admissibility of 404(b) evidence, it is essential that "the court strive to avoid confusion and prejudice to the defendant." *Id.* (quoting *United States v. Temple*, 862 F.2d 821, 824 (10th Cir.1988)).

## Necessary Steps to Admit 404(b) Evidence

The Tenth Circuit has established a procedure by which the district court should determine the admissibility of 404(b) evidence:

> Because evidence of "other crimes" requires a defendant to defend against past actions and tends to show that the defendant is "generally bad," *United States v. Burkhart*, 458 F.2d 201, 204 (10th Cir. 1972), we have long urged trial courts to determine that the proffered evidence:
>
> (1) tends to establish intent, knowledge, motive, identity, or absence of mistake or accident;
>
> (2) is so related to the charged offense that it serves to establish intent, knowledge, motive, identity, or absence or mistake or accident;
>
> (3) has real probative value and not just possible worth;
>
> (4) is close in time to the crime charged; and,
>
> (5) even if relevant, be excluded if the probative value is substantially outweighed by the danger of unfair prejudice.

*United States v. Robinson*, 978 F.2d 1554, 1558 (10th Cir.1992) (citations omitted), *cert. denied*, 507 U.S. 1034, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993); *see Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988);[6] *United States v. Edwards*, 69 F.3d 419, 435 (10th Cir.1995), *cert.*

---

**6.** In *Huddleston,* the Supreme Court identified four safeguards which protect the defendant from unduly prejudicial evidence which might be introduced under Rule 404(b):

(1) the evidence must be offered for a proper purpose;

(2) the evidence must be relevant under 402 as enforced through Rule 104(b);

(3) the trial court must determine whether the probative value of the similar acts evidence is not substantially outweighed by its potential for unfair prejudice under Rule 403; and

(4) the trial court must, upon request under Rule 105, instruct the jury that similar acts evidence must be considered only for the limited purpose for which it was admitted.

485 U.S. at 691–692, 108 S.Ct. at 1502.

*denied,* —— U.S. ——, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996).

In addition, the government should "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts." [*United States v.*] *Kendall,* 766 F.2d [1426] at 1436 [ (10th Cir.1985) ]. In *Kendall,* we indicated that the "trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating Rule 404(b) will not suffice." *Id.* Subsequently, we held that the failure to specifically identify the purpose of the evidence was harmless error when " 'the purpose for admitting the other acts testimony is apparent from the record, and the district court's decision to admit was correct.' " *United States v. Record,* 873 F.2d 1363, 1375 n. 7 (10th Cir.1989) (quoting *United States v. Orr,* 864 F.2d 1505, (10th Cir.1988)).

*Robinson,* 978 F.2d at 1559; *Harrison,* 942 F.2d at 759 ("Furthermore, the government bears the burden of showing how a defendant's past acts are 'relevant to an issue in the case' by 'articulat[ing] precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.' ") (quoting *United States v. Cardall,* 885 F.2d 656, 671 (10th Cir.1989) (quoting *United States v. Kendall,* 766 F.2d at 1436)).

Finally, "[t]here must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." *United States v. Biswell,* 700 F.2d 1310, 1317–18 (10th Cir.1983). A lack of clear association between the purported purpose for introduction of evidence and the act itself renders the past conviction irrelevant, highly prejudicial and inadmissible.

*Robinson,* 978 F.2d at 1559.

The Tenth Circuit has long "recognized the probative value of uncharged acts evidence to demonstrate motive, intent, knowledge or plan in the context of a conspiracy prosecution." *United States v. Record,* 873 F.2d 1363, 1375 (10th Cir.1989) (citations omitted); *see United States v. Suntar,* 897 F.2d 469, 479–480 (10th Cir.1990) (district court prop-

erly admitted evidence of similar acts evidence under to 404(b) to prove knowledge, intent or lack of mistake in Sherman Act violation/conspiracy case). This is especially true when the prior uncharged misconduct is close in time and similar in method to the charged scheme. *Record,* 873 F.2d at 1375.

The court notes that the defendant himself mentioned his prior conviction during one of the taped conversations between himself, Undra Mock and Agent Hernandez. The evidence of Ailsworth's prior conviction was offered for a proper purpose, was relevant, and was properly admitted under a Rule 403 analysis. A limiting instruction was requested and given. The court concludes that its admission of evidence regarding Ailsworth's prior drug trafficking conviction under Rule 404(b) was correct.

### Exclusion of evidence regarding Government's inquiry to Ailsworth's Cellmate

■ Over the defendant's objection, the court excluded evidence that the government had attempted to contact one of Ailsworth's cellmates for the purpose of learning if Ailsworth had made incriminating statements during the time he was incarcerated and awaiting trial. The defendant contended that this evidence was relevant to show that he was "the target" of a misguided quest by the government to prove that he was the kingpin in a large scale crack distribution network.

The marginal value of this evidence, if any, was substantially outweighed by its prejudicial effect and was properly excluded under Fed.R.Evid. 403. The government routinely engages in numerous ways of investigating crimes and nothing in the manner or circumstances of this investigation suggested that the government's attempt to contact Ailsworth's former cellmate was improper in any way. Coupled with the delays occasioned by such testimony, the confusion likely caused by such testimony and its marginal value, the court properly excluded that evidence. *Cf. United States v. Veal,* 23 F.3d 985, 989 (6th Cir.1994) (district court did not abuse its discretion in excluding evidence that government had miscalculated number of bogus

**1496**

prescriptions; evidence was irrelevant and noted that the jury would not be called upon to determine whether the government's investigation had been good or bad).

### Post-verdict Motions

**1. "Motion to Contact Jurors" (Dk. 728).**

■ Ailsworth seeks an order permitting him to contact the jurors in this case. Ailsworth notes that the trial of this matter took over four weeks and that the jury deliberated for over five days. Ailsworth contends that the numerous questions posited by the jury indicates that they were confused. Ailsworth's counsel requests permission to contact the jurors as he "has filed a Rule 29 Motion in this matter and that permission to talk with jurors who are willing to do so would assist in further foundation for the Motion." The government opposes Ailsworth's motion, characterizing it as a fishing expedition.

Under the local rules of this district, counsel could not make the inquiry he desires without leave of the court. D.Kan. Rule 47.1(b) (formerly D.Kan. Rule 123) provides: "Under no circumstances except by order of the court granted upon good cause shown shall any party or any party's attorney or their agents or employees examine or interview any juror, either orally or in writing, nor shall any juror consenting to be interviewed disclose any information with respect to the specific vote of any juror other than the juror being interviewed, or the deliberations of the jury." "District courts have 'wide discretion' to restrict attorney-juror contact in order to shield jurors from post-trial 'fishing expeditions' by losing attorneys." *Green Construction Co. v. The Kansas Power & Light Co.*, 1 F.3d 1005, 1012 (10th Cir.1993) (citing *Journal Publishing Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir.1986)). In evaluating requests to interview jurors in which there is an allegation of extraneous influence on the jurors "[t]he district court must balance the losing party's right to an impartial jury against the risks of juror harassment and jury tampering." *Id.* (citing *Tanner v. United States*, 483 U.S. 107,

126–27, 107 S.Ct. 2739, 2750–51, 97 L.Ed.2d 90 (1987)).[7]

Ailsworth's motion seeks information that could not be used in support of his motion for judgment of acquittal or for securing a new trial. Even if the court would grant Ailsworth's counsel permission to contact the jurors in this case, under Fed.R.Evid. 606(b), nothing those jurors stated could be considered by the court in evaluating the merits of his motion for judgment of acquittal. Fed.R.Evid. 606(b) provides:

> (b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Based upon Rule 606(b), an expedition such as the one Ailsworth ostensibly wishes to embark would ultimately be futile. "While a juror 'may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention,' a juror 'may not testify as to ... the effect of anything ... concerning the juror's mental processes in connection therewith.' " *United States v. Davis*, 60 F.3d 1479, 1482 (10th Cir.1995) (quoting Fed.R.Evid. 606(b)), *cert. denied*, —— U.S. ——, 116 S.Ct. 1829, 134 L.Ed.2d 933 (1996). *See Allen v. Minnstar, Inc.*, 97 F.3d 1365 (10th Cir.1996) ("[W]e note that plaintiff's attempt to impeach the jury's

---

7. Ailsworth does not suggest that he seeks information concerning extraneous influences on the jury. Any issue regarding possible outside influences on the jury was resolved by the court during trial and nothing suggests that those rulings were inappropriate or need be revisited.

verdict based upon a juror's post-verdict statement is prohibited by Federal Rule of Evidence 606(b).") (*citing United States v. Wickersham*, 29 F.3d 191, 194 (5th Cir.1994) (noting that Rule 606(b) has been used to bar testimony even in cases where a former juror states a jury misunderstood instructions)); *United States v. Wickersham*, 29 F.3d 191, 194 (5th Cir.1994) ("Rule 606(b) has consistently been used to bar testimony when the jury misunderstood instructions."); *Capps v. Sullivan*, 921 F.2d 260, 263 (10th Cir.1990) ("We have strictly construed Rule 606(b) to prohibit a juror from testifying to the effect of anything upon that juror's mind not within the specified exceptions to the rule [for extraneous prejudicial information and outside influence]."). Ailsworth apparently only seeks to explore the mental processes of the jurors in reaching their verdict. Any information gleaned from such communications would not be admissible and would therefore provide no basis for relief. Consequently, Ailsworth has not demonstrated good cause for an order permitting him to contact the jurors in this case.

**2. "Motion for Judgment of Acquittal." (Dk. 725).**

Ailsworth contends that he is entitled to judgment of acquittal on Count 1 of the superseding indictment. First, Ailsworth argues that the evidence did not establish the elements of the conspiracy charged in Count 1 of the second superseding indictment. Second, Ailsworth argues that a fatal variance from the indictment occurred as evidence by the jury's notation on the verdict form. Ailsworth contends that he was convicted of a crime not charged in the second superseding indictment. Third, Ailsworth contends that the court's *Allen* instruction was unduly coercive.

The government responds, arguing that the jury's verdict is supported by the evidence. The government contends that no variance occurred. At most, the jury's notation on the verdict form narrowed the scope of the conspiracy charge, but that the conspiracy of which he was convicted fell within the parameters of the conspiracy charged in the second superseding indictment. The

government contends that the *Allen* instruction was not coercive.

**Sufficiency of the Evidence**

To review the sufficiency of the evidence supporting a criminal conviction, the court must examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Miller*, 987 F.2d 1462, 1464 (10th Cir.1993). In reviewing the sufficiency of the evidence, the court must consider both direct and circumstantial evidence, as well as reasonable inferences to be drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir.1993) (citing *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990)).

" 'A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such a finding is infirm because it is not based on the evidence.' " *United States v. Jones*, 49 F.3d 628, 633 (10th Cir.1995) (quoting *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir.1987) (quoting *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir.1982))).

The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow from a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.

*Jones*, 49 F.3d at 632 (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 895 (3d Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981)). "Additionally, 'the essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' " *Jones*, 49 F.3d at 632 (quoting *Galloway v. United*

*States,* 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943)).

The court must accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses. *Davis,* 1 F.3d at 1017 (citing *United States v. Youngpeter,* 986 F.2d 349, 352 (10th Cir.1993)).

### Standards for Motion for New Trial

Although Ailsworth's motion seeks an acquittal on count one, if the court were to accept his arguments regarding the coercive effect of the *Allen* instruction he would generally only be entitled to a new trial—not a judgment of acquittal—on those counts decided after the *Allen* instruction was given.[8] *See, e.g., United States v. Robinson,* 953 F.2d 433 (8th Cir.1992) (improper *Allen* charge coerced jury requiring reversal of conviction and remand for new trial). This analysis is also true for several of the other errors identified by the defendant. The court will therefore set forth the standards for determining whether a new trial is appropriate.

A court may grant the defendant a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. Courts view motions for new trial with disfavor and grant them only with great caution. *United States v. Chatman,* 994 F.2d 1510, 1518 (10th Cir.), *cert. denied,* 510 U.S. 883, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993); *United States v. Leeseberg,* 767 F.Supp. 1091, 1093 (D.Kan.1991). The defendant has the burden of proving the necessity of a new trial. *United States v. Davis,* 15 F.3d 526, 531 (6th Cir.1994). For purposes of this case, the relevant rule is that a new trial should be granted upon "[a]ny error of sufficient magnitude to require reversal on appeal." 3 Charles A. Wright, *Federal Practice and Procedure* § 556 (1982); *see United States v. Stiner,* 765 F.Supp. 663, 664 (D.Kan.1991), *aff'd,* 952 F.2d 1401 (10th Cir.1992) (Table); *United States v. Suntar Roofing, Inc.,* 709 F.Supp. 1526, 1530 (D.Kan.1989), *aff'd,* 897 F.2d 469 (10th Cir.1990). The decision of whether or not to grant a new trial is committed to the sound discretion of the district court. *See*

*United States v. Patterson,* 41 F.3d 577, 579 (10th Cir.1994).

### Elements of a § 846 Conspiracy

" 'In order to sustain a conviction for conspiracy, the government must show that there was an agreement to violate the law, that the defendant knew the essential objectives of the conspiracy, that the defendant knowingly and voluntarily took part in the conspiracy, and that the coconspirators were interdependent.' " *United States v. Richardson,* 86 F.3d 1537, 1546 (10th Cir.1996) (quoting *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992), *cert. denied,* 507 U.S. 922, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993)), *cert. den.* —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). "The government must show that the defendant had at least a 'general awareness of both the scope and the objective' of the conspiracy." *Richardson,* 86 F.3d at 1546 (quoting *Evans,* 970 F.2d at 670). "The government must also show that the defendant had ' "a meeting of the minds in the common design, purpose, or objects of the conspiracy" ' with other conspirators." *Richardson,* 86 F.3d at 1546 (quoting *Evans,* 970 F.2d at 670) (quoting *United States v. Jones,* 808 F.2d 754, 755 (10th Cir.1987). Proof of an overt act in furtherance of the conspiracy is not an essential element of a § 846 violation. *United States v. Shabani,* 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

"A defendant's activities are interdependent if they 'facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole.' " *United States v. Ivy,* 83 F.3d 1266, 1286 (10th Cir.1996) (quoting *United States v. Horn,* 946 F.2d 738, 740–41 (10th Cir.1991)).

The mere presence of a central figure does not necessarily establish interdependence in a single conspiracy. *United States v. Roberts,* 14 F.3d 502, 511 (10th Cir.1993). Rather, interdependence exists where "each co-conspirators' activities 'constituted essential and integral steps toward the realization of a common, illicit goal.' " *Fox,* 902 F.2d at 1514 (quoting *United*

---

**8.** Ailsworth does suggest, however, the coercive effect of the *Allen* instruction supports his variance argument. The court has considered that

argument in evaluating and rejecting Ailsworth's "variance" argument.

*States v. Brewer*, 630 F.2d 795, 799 (10th Cir.1980)); *see also Evans*, 970 F.2d at 671 ("What is needed is proof that [the conspirators] intended to act together for their shared mutual benefit within the scope of the conspiracy charged."). Moreover, in order to establish interdependence, the government need not show that the "[c]oconspirators ... know the identities or details of each scheme or have connections with all other members of the conspiracy." *Roberts*, 14 F.3d at 511. Rather, where large quantities of drugs are being distributed through a key distributor, "each major buyer may be presumed to know that he is part of a wideranging venture, the success of which depends on performance by others whose identity he may not even know." [*United States v.*] *Dickey*, 736 F.2d [571] at 581 [ (10th Cir.1984) ].

*Edwards*, 69 F.3d at 431.

" 'The nature of the offense of conspiracy with its attendant aspects of secrecy, often requires that elements of the crime be established by circumstantial evidence.' " *United States v. Savaiano*, 843 F.2d 1280, 1293 (10th Cir.) (quoting *United States v. Andrews*, 585 F.2d 961, 964 (10th Cir.1978)), *cert. denied*, 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988).

### Analysis

■ In this case, the government presented overwhelming evidence of Ailsworth's guilt. The government's evidence indicated that Ailsworth was the head of a highly successful conspiracy to distribute crack cocaine. Ailsworth, through a network of cohorts, distributed crack cocaine on several occasions to persons in the Topeka area.

In general, each drug transaction was preceded by a call or a page. Ailsworth or one of his coconspirators would arrange the drug transaction. A transaction would subsequently occur, exchanging crack cocaine for food stamps. Ailsworth obtained his cocaine from various sources. Eventually Ailsworth made a connection with a person in California who made regular shipments to Ailsworth

and Mock. Ailsworth and Mock would split the cost of a kilogram of crack cocaine. Ailsworth stored his cocaine at Mock's house and at Douglas' residence. Douglas received payment for storing Ailsworth's crack.

Counts 26, 27 and 28 related to a November 19, 1993, drug transaction between Agent Hernandez, Ailsworth and Douglas. Ailsworth was paged. Ailsworth went to Douglas' house. Douglas drove to Evans' house where $3,600 in food stamps were exchanged for 33.81 grams of crack cocaine. After the transaction, Douglas and Ailsworth split the proceeds of the sale.

The government also introduced substantial evidence of unexplained wealth.[9] The direct and circumstantial evidence of Ailsworth's guilt was considerable. The audio and videotapes actually captured Ailsworth and/or his coconspirators making illegal transactions. Agent Hernandez' testimony, the trial testimony of Ailsworth's coconspirators (Undra Mock, Arnett Rice, Calvin Conway and Terence Douglas), and all of the other direct and circumstantial evidence was clearly sufficient for a rational factfinder to conclude beyond a reasonable doubt that Ailsworth was guilty on each count of which he was convicted.

Putting aside the court's assessment of the evidence, it is clear that the jury was not convinced beyond a reasonable doubt as to each count charged in the second superseding indictment. Nor was the jury convinced that the defendant was the head of a large crack cocaine conspiracy as suggested by the government. The jury essentially rejected the testimony of Ailsworth's alleged coconspirators. Instead, the jury only chose to convict Ailsworth on those counts in which his own actions were captured on tape. The jury was apparently convinced, however, that Ailsworth conspired with Terence Douglas in committing the crimes charged in Counts 26, 27 and 28.

It is also apparent that the jury had serious difficulties understanding the Tenth Circuit's formulation of the "interdependence"

---

**9.** Ailsworth attributed his unexplained wealth to his success as a high stakes gambler. Ailsworth elicited testimony suggesting that he had made in excess of $20,000 on single occasions through his illicit gambling ventures.

element of a conspiracy. This court's jury instruction on conspiracy is essentially a synthesis of Tenth Circuit precedent regarding the elements of conspiracy. *See* Attachment #1, Jury Instruction No. 11. In reviewing the evolution of the Tenth Circuit's current formulation of the elements of conspiracy, it is unclear that the court of appeals initially intended the breakdown of the elements to be the pattern for jury instructions. Instead, it appears that the Tenth Circuit's discussion of the "elements" of conspiracy may simply have been an analytic framework for the courts to analyze the sufficiency of the evidence rather than the template for instructing the jury. In this court's opinion, that framework that has developed in regard to the law of conspiracy is unnecessarily complex for purposes of instructing the jury. Yet, both the government and the defendant in this and in other cases have requested instructions patterned after that case law. Based upon those requests and the growing body of Tenth Circuit precedent implying that these instructions are appropriate, the court feels reluctantly compelled to submit the complex instructions to the jury.[10]

In any event, the court concludes that there was sufficient evidence for a rational factfinder to conclude that Ailsworth agreed with Douglas to possess with the intent to distribute crack cocaine, that Ailsworth knew all of the essential objectives of that conspiracy, that he knowingly and voluntarily took part in that conspiracy, and that his activities were interdependent with Douglas' as his acts facilitated their illicit ventures as a whole. The fact that the jury chose to convict Ailsworth on some counts but not on others does not evidence an inconsistent verdict nor does it serve as a basis to undermine the verdict regarding Count One or any of the other counts of which he was convicted. *Cf., United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The jury found that Ailsworth conspired with one other person. Had all of Ailsworth's other codefendant's pro-

ceeded to trial, and had they acquitted all of them but Douglas, the jury's verdict of guilty would obviously stand. *See United States v. Rogers,* 94 F.3d 657 (10th Cir.1996) (Table; available on Westlaw at 1996 WL 470322) ("Before we will overturn a verdict for being inconsistent with that of a codefendant, all alleged coconspirators must be acquitted."); *United States v. Abbott Washroom Systems, Inc.,* 49 F.3d 619, 622–23 (10th Cir.1995) (under rule of consistency, defendant's conspiracy conviction must be reversed if *all* alleged coconspirators are acquitted of the same conspiracy charges).[11]

The court will now turn its attention to specific trial errors alleged by Ailsworth. As indicated above, none of the "errors" alleged by Ailsworth deprived him of a fair trial.

### Variance

"The Fifth Amendment requires that a defendant be tried only on charges handed down by a grand jury." *United States v. Wright,* 932 F.2d 868, 874 (10th Cir.). *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). "A variance that broadens the indictment constitutes a constructive amendment and is reversible per se." *Id.* The prohibition against variances is designed to insure that the defendant has notice of the crimes charged. *United States v. Williamson,* 53 F.3d 1500, 1513 (10th Cir.1995).

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." *Dunn v. United States,* 442 U.S. 100, 105, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743 (1979). However, a variance is not fatal to the government's case unless the variance affects "the substantial rights of the accused." *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). Accordingly, where a single conspiracy is charged in the indictment, and the government proves only multiple conspiracies, a defendant who suffers substantial prejudice must have his conviction reversed. *Kotteakos v. United States,* 328

---

**10.** The jury instructions in this case, which included a verbatim copy of the relevant portions of the second superseding indictment, were approximately ninety-five pages in length.

**11.** Other circuits have held that the rule of consistency is no longer the law in light of the Supreme Court's decision in *Powell. See Abbott Washroom Systems,* 49 F.3d at 623 n. 1.

U.S. 750, 773–74, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946).

Whether a single conspiracy existed is a fact question for the jury and we review the jury's decision in a light most favorable to the government. *United States v. Powell,* 982 F.2d 1422, 1431 (10th Cir.1992), *cert. denied,* [508] U.S. [917], 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). In determining whether a single conspiracy existed, a focal point of the analysis is whether the alleged coconspirators' conduct exhibited interdependence. *United States v. Daily,* 921 F.2d 994, 1007 (10th Cir.1990), *cert. denied,* 502 U.S. 952, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991). Interdependence exists where "each coconspirators activities 'constituted essential and integral steps toward the realization of a common, illicit goal.'" *Fox,* 902 F.2d at 1514 (quoting *United States v. Brewer,* 630 F.2d 795, 799 (10th Cir.1980)).

*Edwards,* 69 F.3d at 432. "'A variance "is fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy."'" *Williamson,* 53 F.3d at 1513 (quoting *United States v. Haddock,* 956 F.2d 1534, 1548 (10th Cir.1992) (quoting *Hunter v. New Mexico,* 916 F.2d 595, 599 (10th Cir.1990), *cert. denied,* 500 U.S. 909, 111 S.Ct. 1693, 114 L.Ed.2d 87 (1991))).

Even assuming a variance between the indictment and the proof at trial, Defendants are not entitled to relief unless the variance affected their substantial rights. *See Powell,* 982 F.2d at 1432 (addressing substantial rights prong even though court concluded no variance existed); *United States v. Irwin,* 654 F.2d 671, 683 (10th Cir.1981) (same).

*Edwards,* 69 F.3d at 433. In evaluating whether the defendant's substantial rights were affected, the court should consider the following factors: (1) whether the proliferation of separate conspiracies in the case affected the jury's ability to segregate each defendant's individual actions and participation; (2) whether the variance caused confusion among the jurors as to the limited use of certain evidence; and (3) the strength of the evidence underlying the conviction. *Powell,* 982 F.2d at 1432.

### Need for a Multiple Conspiracy Instruction

A multiple conspiracy charge instructs the jury to acquit if it finds that the defendant was not a member of the indicted conspiracy but rather was "involved in another conspiracy." *United States v. Cavin,* 39 F.3d 1299, 1310 (5th Cir.1994). In *Evans,* we held that a district court's failure to give a multiple conspiracy jury instruction is not reversible error as long as the instructions informed the jury that "'the government had the burden of proving beyond a reasonable doubt the [single] conspiracy as alleged, and that the evidence should be considered separately as to each individual defendant.'" *Evans,* 970 F.2d at 675 (quoting *United States v. Watson,* 594 F.2d 1330, 1340 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979)).

69 F.3d at 433.[12]

### Jury Verdict/Surplusage on the Verdict Form

"In a federal criminal trial, a verdict must be unqualified and unambiguous. It must represent the unanimous vote of the jurors. A trial court may not accept a verdict if it is defective but must either direct the jury to retire for further deliberations or declare a mistrial." *United States v. Lee,* 532 F.2d 911, 913 (3rd Cir.), *cert. denied,* 429 U.S. 838, 97 S.Ct. 109, 50 L.Ed.2d 105 (1976). Fed. R.Crim.P. 31(d) provides:

When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

"If, during the poll, a doubt arises about the unanimity of the jury verdict, the preferred course of action by the trial judge is set out

---

**12.** Ailsworth did not specifically request a multiple conspiracy instruction.

in Federal Rule of Criminal Procedure 31(d): he should either declare a mistrial or send the jury back for further secret deliberation." *Lee*, 532 F.2d at 915.

■ Although subject to limited exceptions, in general the only proper verdicts in a criminal case are "guilty" or "not guilty." *See* 3 Charles A. Wright, *Federal Practice and Procedure* § 512 at 9 (2nd ed.1982). Although the Federal Rules of Civil Procedure specifically provide for the use of special verdicts or a general verdict accompanied by special interrogatories, *see* Fed.R.Civ.P. 49, the Federal Rules of Criminal procedure contain no counterpart. In fact, "the submission of a form calling for a special verdict by a jury in a criminal case has been held to be error." 3 *Federal Practice and Procedure* § 512 at 7.

Although instructed to simply complete the verdict form provided by checking "not guilty" or "guilty," jurors sometimes feel compelled to add additional comments, remarks or requests to their verdict. Whether those extraneous remarks cast doubt on the validity of the verdict turns on the nature of those comments and possibly upon the manner in which the court responds to the jury's remarks or questions.

■ In general, unnecessary statements in a verdict form may be disregarded as surplusage. *See Shelton v. United States*, 235 F.2d 951, 954 (4th Cir.1956). Issues regarding surplusage on the verdict form have typically arisen in instances where the jury finds the defendant guilty but nevertheless urges the court to exercise leniency in imposing punishment. "Generally, a recommendation of leniency made by a jury without statutory authorization does not affect the validity of the verdict and may be disregarded by the sentencing judge." *Rogers v. United States*, 422 U.S. 35, 38, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975). One exception to this general rule which has been recognized by some courts arises where the circumstances of the jury's recommendation cast doubt upon the unqualified nature of the verdict. Under this exception, the district court must make further inquiry regarding the jury's comments. *See Id.* (citing *Cook v. United States*, 379 F.2d 966, 970 (5th Cir.

1967)). *See United States v. Davis*, 747 F.2d 440 (8th Cir.1984) (jury's comment that "We the jury believe that [the defendant] was used by the witnesses who testified against him" did not qualify the verdict or render it equivocal or ambiguous); *Lee*, 532 F.2d at 914 (jury's plea for the "Court to exercise extreme leniency" in sentencing the defendant was only a recommendation that did not affect the validity of the verdict and may be regarded as surplusage); 3 *Federal Practice and Procedure* § 512 at 10–11 ("If the jury chooses in its verdict to recommend leniency, this is not binding in any way on the judge and may be disregarded as surplusage. But under unusual circumstances, where the responses of the jurors when they are polled indicated strongly that there would have been no agreement on the verdict unless the recommendation of leniency was also accepted, it was held that the verdict was nullified and a new trial was required."); 8A James Wm. Moore, *Moore's Federal Practice* ¶ 31.02[3] ("If the jury itself, without instructions from the court, attempts to qualify a general verdict, its qualification will generally be treated as a nullity and will not taint the verdict.").

## Analysis

■ In this case, no variance occurred. Even if a variance occurred, Ailsworth's substantial rights were not affected. The fact that the jury rejected the government's evidence that Ailsworth was the "kingpin" in the crack distribution network did not create a fatal variance. To secure a conviction, the government was not required to prove that Ailsworth was the "leader" of the conspiracy. "[T]he fifth amendment grand jury guarantee is not violated if a defendant is convicted upon evidence which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment." *Wright*, 932 F.2d at 874 (quoting *United States v. Mobile Materials*, 881 F.2d 866, 874 (10th Cir.1989)). In this case, although unpersuaded as to the breadth of his involvement in the conspiracy, the jury found Ailsworth guilty of a conspiracy falling within the scope of the conspiracy charged in Count

One. *See United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985) ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.").

The jury's additional comments did not create a fatal variance or otherwise prejudice the defendant. In light of the fact that the crimes charged in counts 26, 27 and 28 were part of the conspiracy charged in count 1, and because the jury found that the government had proven all of the essential elements of Counts 1, 26, 27 and 28 beyond a reasonable doubt, their additional comment is merely surplusage. For whatever reason,[13] the jurors felt compelled to explain that although they were satisfied that the government had proven beyond a reasonable doubt that the defendant had conspired with Terence Douglas to distribute crack cocaine, they were not satisfied that the government had proven that Ailsworth had conspired with anyone else.[14] This conclusion is reasonable in light of the numerous questions the jury asked regarding the issue of whether the government had to prove a conspiracy between the defendant and *all* of the named coconspirators, or whether it was sufficient for the government to prove that the defendant conspired with just one other person. As set forth in the court's original jury instructions, and as repeatedly explained in the court's supplemental instructions/responses, to find Ailsworth guilty of Count 1 it was unnecessary for the government to prove beyond a

reasonable doubt that he had conspired with each named coconspirator, only that he had knowingly and voluntarily conspired with one other person, other than a law enforcement officer or government agent, to possesses a controlled substance with the intent to distribute and that the defendant and the other person(s) or coconspirator(s) intended to act together for their shared mutual benefit within the scope of the conspiracy charged in Count One.

At worst, the jury's extraneous comments are a veiled plea for leniency by the court. By explaining that they were only finding a conspiracy between Ailsworth and Douglas, the jury hoped to limit Ailsworth's potential exposure during sentencing by fully explaining their verdict on Count 1. The jury's remarks are surplusage and therefore do not cast any doubt on the validity of their verdict.

### Questions from the Jury

The Tenth Circuit recently discussed the appropriateness of providing supplemental jury instructions after the jury has voiced concerns:

> The submission of supplemental jury instructions after the jury has retired is a matter committed to the trial court's discretion. *United States v. Zimmerman,* 943 F.2d 1204, 1213 (10th Cir.1991). The decision to reread the jury an instruction previously given is encompassed within the court's exercise of this discretion. *See United States v. Cotton,* 646 F.2d 430, 434 (10th Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 316, 70 L.Ed.2d 159 (1981). Whether to provide the jury with written instruc-

**13.** During the trial the court permitted the defendant over the government's objection to cross-examine the codefendants who had entered pleas regarding the potential penalty each faced prior to entering their agreement with the government. Each codefendant faced substantial periods of incarceration had they not entered guilty pleas. The jurors' desire to explain their verdict may have stemmed in part from their knowledge of the penalties Ailsworth likely faced if he were convicted of those same crimes.

In this regard the jury was instructed:

During this trial, you have heard evidence concerning the punishment that may be imposed for violation of certain federal laws. This evidence was admitted solely for you to

use in evaluating the credibility of a witness who had entered a guilty plea in exchange for the dismissal of certain charges or other potential benefits.

The punishment provided by law for the offenses charged is a matter exclusively within the province of the court and may not be considered by the jury in any way in arriving at a verdict as to the guilt or innocence of the defendant.

Jury Instruction #26.

**14.** Of course, this conclusion could have obviously been indirectly gleaned from the numerous number of counts upon which the jury found the defendant "not guilty."

tions is likewise discretionary. *See United States v. Calabrese,* 645 F.2d 1379, 1388 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390, and *cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981). However, "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). We review the jury instructions as a whole to determine whether they correctly state the governing law and provide an ample understanding of the issues and the applicable standards. *Zimmerman,* 943 F.2d at 1213.

*United States v. Arias–Santos,* 39 F.3d 1070, 1075–76 (10th Cir.1994) (quoting *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1156, 130 L.Ed.2d 1113 (1995).

■■■ The court believes all of its responses to the numerous questions asked by the jury were correct and appropriate. Admittedly, the answers to several of the jury's questions could have been found in the court's initial jury instructions. For whatever reason, the jury was unable to find those answers on their own or did not like the answers that they found. Therefore it was incumbent on the court to answer their pleas for clarification and to offer guidance by responding as clearly, concisely and accurately as possible. On each and every occasion, counsel was afforded an opportunity to object to any response, make suggestions or to provide a better answer than the one formulated by the court. The fact that the court did not always adopt the defendant's suggestions is not a basis for a new trial. " 'While a defendant is entitled to an instruction regarding his theory of the case, the district judge has substantial discretion in formulating the instructions, so long as they are correct statements of the law and adequately cover the issue presented.' " *United States v. Grey,* 56 F.3d 1219, 1222 (10th Cir.1995) (quoting *United States v. Vasquez,* 985 F.2d 491, 496 (10th Cir.1993)); *see United States v. Levine,* 41 F.3d 607, 615 (10th Cir.1994) ("With respect to tendered jury instructions which were refused, 'so long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction is not an abuse of discretion.' " (quoting *United States v. Suntar Roofing, Inc.,* 897 F.2d 469, 473 (10th Cir.1990)). In responding to the jury's questions, the court constantly reminded them to consider the instructions as a whole.

" '[A] verdict will not be upset on the basis of speculation' about possible jury confusion." *Allen,* 97 F.3d at 1373 (quoting *Howard D. Jury v. R & G Sloane Mfg. Co.,* 666 F.2d 1348, 1351 (10th Cir.1981)). In this case, the court's responses to the jury's questions apparently quelled their concerns and sources of confusion.

### Appropriateness of the Allen Instruction

The purpose of an *Allen* instruction is to encourage a unanimous verdict without infringement upon the conscientious views of each individual juror. *United States v. Smith,* 857 F.2d 682, 683 (10th Cir.1988). The Tenth Circuit has "traditionally urged caution in the use of the *Allen* instruction." *United States v. Rodriguez–Mejia,* 20 F.3d 1090, 1091 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 640, 130 L.Ed.2d 545 (1994). "The preferred rule of procedure is to give an *Allen* instruction at the same time as other instructions; however, this is not a per se rule." *Id.* The Tenth Circuit reviews "whether an *Allen* instruction was erroneously given on a case-by-case basis with a view toward determining whether the instruction had a coercive effect on the jury." *Id.* "Some factors considered in making this determination include: (1) The language of the instruction; (2) its incorporation with other instructions; and (3) the timing of the instruction, for example, whether given before the jury has commenced deliberations and whether given before the jury has reached an impasse or deadlock." *United States v. Porter,* 881 F.2d 878, 888 (10th Cir.), *cert. denied,* 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

### Analysis

■■■ Nothing argued by Ailsworth demonstrates that he was prejudiced by the *Allen* instruction or that a new trial on those counts decided after the reading of the in-

struction is warranted. Contrary to his suggestion, there is no indication that the *Allen* instruction, in either its timing or language, was coercive. The court is satisfied that the jury was not coerced into any decision based upon that instruction. The instruction primarily afforded the jury an additional opportunity to reconsider their prior difficulties with the instructions and to reconsider the evidence in light of those instructions. The jury returned for over a full day of further deliberations after the *Allen* instruction was read. Ailsworth was in part a beneficiary of those additional deliberations, as the jury returned a "not guilty" verdict on six counts. The fact that the jury was unable to reach a unanimous verdict on Counts 3 and 12 further demonstrates that the jury was not compelled or coerced to reach a unanimous verdict by the court's *Allen* instruction.

In sum, the court concludes that Ailsworth received a fair trial and that nothing he alleges entitles him to judgment of acquittal or to a new trial on any counts.

IT IS THEREFORE ORDERED that Ailsworth's "Motion to Contact Jurors" (Dk. 728) is denied.

IT IS FURTHER ORDERED that Ailsworth's "Motion for Judgment of Acquittal" (Dk. 725) is denied.

### ATTACHMENT #1

### INSTRUCTION NO. 11

Title 21, U.S.C. § 846 makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of § 841(a)(1). Section 841(a)(1) makes it a crime for anyone to knowingly possess with the intent to distribute a controlled substance. So, under the law, a "conspiracy" is an agreement or a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

Count 1 of the second superseding indictment charges Jessie Ailsworth, Jr., aka "J.C.", Undra P. Mock, Kenneth Torain, Arnett Louise Rice, aka Delores Perry, Terence J. Douglas, aka "T", George Stewart, Jr., aka "Pigg", and Calvin Lee Conway with knowingly and intentionally conspiring with each other and persons whose identities are unknown to the grand jury, to possess, with the intent to distribute or dispense, 50 grams or more or a mixture or substance which contained cocaine based or crack cocaine, approximately 1947.58 grams of cocaine based or crack cocaine, in violation of 21 U.S.C. § 846. The second superseding indictment alleges that this crime was committed on or about March 19, 1993, and continued until March 22, 1994.

What the evidence in the case must show beyond a reasonable doubt as to count one is:

*FIRST:* That on or about the dates alleged, in the District of Kansas, two or more persons agreed to possess with intent to distribute a controlled substance;

*SECOND:* That the defendant, Jessie Ailsworth, Jr., knew at least the essential objectives of the conspiracy charged in count one;

*THIRD:* That the defendant, Jessie Ailsworth, Jr., knowingly and willfully became a part of the conspiracy charged in count one; and

*FOURTH:* That the alleged coconspirators were interdependent.

The gist of the crime of conspiracy is the unlawful combination or agreement to violate the law. While a conspiracy involves an agreement to violate the law, it is not necessary that the persons charged meet each other and enter into an express or formal agreement, or that they stated in words or writing what the scheme was or how it was to be carried out. Nor is it necessary that the members have directly stated between themselves the details or purpose of the scheme. It is sufficient to show that they tacitly came to a mutual understanding to possess a controlled substance with the intent to distribute. The agreement may be shown by a concert of action by members who participate with knowledge of the common unlawful purpose. In essence, the defendant's actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.

The existence of such an agreement can be proved indirectly or inferred from the circumstances and conduct of the parties. This is so, because a conspiracy is ordinarily characterized by secrecy in its origin and its execution. You should consider the actions and declarations of all of the alleged coconspirators which were done to carry out an apparent criminal purpose together with any reasonable inferences to be drawn from such evidence. Proof that people simply met together from time to time and talked about common interests, or acted in a similar way, is not enough to establish a criminal agreement.

A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. Each member of the conspiracy may perform separate and distinct acts. If a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him for conspiracy even though he had not participated before and even though he played only a minor part.

Mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

To establish interdependence, the government must prove that the coconspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged. Interdependence exists where each coconspirators' activities constituted essential and integral steps toward the realization of a common, illicit goal.

An act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. An act is done "willfully" if done voluntarily and intentionally and with the intent to accomplish the unlawful purpose, i.e., to possess a controlled substance with the intent to distribute.