**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 10 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESSIE AILSWORTH, JR.,

Defendant-Appellant.

No. 97-3002

_____

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 94-CR-40017-1)

_____

Joseph D. Johnson (Melanie S. Morgan with him on the brief), Law Office of Joseph D. Johnson, Chtd., Topeka, Kansas, for Defendant-Appellant.

Gregory G. Hough, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the brief), United States Attorney's Office, Topeka, Kansas, for Plaintiff-Appellee.

_____

Before BRISCOE, McKAY, and LUCERO, Circuit Judges.

_____

McKAY, Circuit Judge.

_____

Defendant Mr. Ailsworth was indicted in a second superseding indictment on forty-two counts relating to the possession and distribution of cocaine base or crack cocaine, the possession of food stamps, and the use of a firearm. Prior to trial, five counts pertaining to Defendant were dismissed and Defendant's six codefendants entered guilty pleas. A jury found Defendant guilty on seven counts, Counts 1, 6, 7, 9, 26, 27, and 28. The jury failed to reach a verdict for Counts 3 and 12, and acquitted Defendant on all other counts. Defendant appeals his conviction on Count 1.

The indictment on Count 1 alleged that Defendant conspired with six coconspirators "to possess, with the intent to distribute or dispense, 50 grams or more of a mixture or substance which contained cocaine base or crack cocaine, to wit: approximately 1947.58 grams of cocaine base or crack cocaine." R., Vol. I, Doc. 287 at 1-2. On the verdict form, the jury checked the "guilty" box for Count 1 and added a notation stating that Defendant was guilty of Count 1 "[a]s related to Counts # 26, 27 and 28 on 11/19/93 only." R., Vol. II, Doc. 720 at 1. Counts 26, 27, and 28 consist of the following substantive offenses, all occurring on November 19, 1993: Count 26 alleged that Defendant knowingly and intentionally used a communication facility in causing or facilitating the possession, with intent to distribute or dispense, a mixture or substance which contained cocaine base or crack cocaine, see R., Vol. I, Doc. 287 at 19; Count 27 alleged that Defendant possessed with intent to distribute or dispense "approximately 33.81 grams of cocaine base or crack cocaine," id. at 19-20; and Count 28 alleged that

-2-

Defendant acquired and possessed food stamp coupons "in a manner not authorized by the United States Department of Agriculture's Food Stamp Program," id. at 20. Defendant contends that the district court erred in denying his motion for Judgment of Acquittal. He rests his argument on several points: The court should have inquired about the notation on the jury verdict form because the verdict was ambiguous; the evidence was insufficient to support Defendant's conviction on Count 1; there was a fatal variance between the indictment, which alleged a single conspiracy, and the government's proof at trial, which Defendant characterizes as attempting to establish the existence of multiple narrower conspiracies; and the court's use of an Allen instruction coerced the jury's verdict. We address each argument in turn. We review the denial of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government to determine if the jury could have found Defendant guilty of the essential elements of the crime beyond a reasonable doubt. See United States v. Williams, 923 F.3d 1397 (10th Cir. 1990), cert. denied, 500 U.S. 925 (1991). We review the denial of a motion for new trial[1] under an abuse of discretion standard. See United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997). When the court's decision on a new trial motion turns on an issue of law, we review that determination de novo. Weese v. Schukman, 98 F.3d 542, 549 (10th Cir. 1996).

---

[1] The district court analyzed Defendant's motion seeking an acquittal as a motion for a new trial. See United States v. Ailsworth, 948 F. Supp. 1485, 1498 (D. Kan. 1996).

## I.

Defendant argues that the notation on the jury verdict form reduced the verdict to an unquestionably ambiguous decision. He contends that because the verdict was qualified by the jury's notation, the district court erred in failing to inquire into the meaning of that notation. The government asserts that the notation is surplusage and, although the jury's notation may have narrowed the scope of the conspiracy, the conspiracy on which Defendant was convicted fell within the parameters of the conspiracy charged in Count 1.

In a federal criminal trial, a verdict is valid if "it . . . 'was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict.'" United States v. Morris, 612 F.2d 483, 490 (10th Cir. 1979) (quoting Cook v. United States, 379 F.2d 966, 968 (5th Cir. 1967)); see United States v. Lee, 532 F.2d 911, 913 (3rd Cir.), cert. denied, 429 U.S. 838 (1976); see also Fed. R. Crim. P. 31(a), (d). Generally, unnecessary or irrelevant statements in a verdict form may be disregarded as surplusage. See Statler v. United States, 157 U.S. 277, 279-80 (1895); Jones v. Jones, 938 F.2d 838, 845 (8th Cir. 1991); Lee, 532 F.2d at 914; Cook, 379 F.2d at 970.[2] An exception to this general rule arises where the circumstances of the

---

[2] Frequently, issues regarding surplusage on verdict forms relate to a jury's recommendation for leniency. See Lee, 532 F.2d at 914. "Generally, a recommendation of leniency made by a jury without statutory authorization does not affect the validity of

jury's recommendation cast doubt upon the unqualified nature of the verdict. See United States v. McCoy, 429 F.2d 739, 742 (D.C. Cir. 1970); Cook, 379 F.2d at 970. We have held that "upon the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt." Morris, 612 F.2d at 489. The circumstances of the jury's verdict or poll, a notation on the verdict form, or what preceded the verdict at trial or during deliberations may highlight the uncertainty or ambiguity in a verdict. See id. at 491; McCoy, 429 F.2d at 741-42; Cook, 379 F.2d at 970. If doubt is cast upon the unqualified nature of the verdict, the court must take the remedial action necessary "to remove the cloud and protect [Defendant's] right[] to [a] valid verdict." Morris, 612 F.2d at 491; see United States v. Hernandez-Garcia, 901 F.2d 875, 877-78 (10th Cir.), cert. denied, 498 U.S. 844 (1990); Cook, 379 F.2d at 970-71 (holding that trial court erred by refusing to re-poll jury when verdict was uncertain).

In this case, the manner in which the jury returned its verdict causes us to take a closer look at the nature of the verdict. After deliberating for four days and asking questions to the court regarding Count 1, the jury returned a partial verdict on August 13, 1996. It found Defendant guilty on four counts, Counts 6, 7, 9, and 28, and not guilty on twenty-two counts. Although the jury indicated that further deliberations would not be useful in reaching a unanimous decision, and over Defendant's objection, the district

the verdict and may be disregarded by the sentencing judge." Rogers v. United States, 422 U.S. 35, 38 (1975).

court gave the jury an instruction pursuant to <u>Allen v. United States</u>, 164 U.S. 492 (1896). The court also allowed the jury to have a copy of the <u>Allen</u> instruction with them during their continued deliberations. On August 15, 1996, the jury found Defendant guilty on Counts 1, 26, and 27 and not guilty on six of the remaining eight counts.[3] The court then polled the jury by reading the notation back to them as part of Count 1. <u>See</u> R., Vol. XXII at 1645-48.

Because the court included the notation in its poll of the jury, the court did not ascertain the precise meaning of the notation. Consequently, we also are unable to know definitively what the jurors meant by the notation. However, we can ascertain the reasonable meaning of the jury's notation from its face. The notation is specific and refers in detail to additional counts on which Defendant was convicted. The notation is not mere surplusage, and it is unreasonable to classify it as simply a plea for leniency. One reasonable interpretation of the notation is that the jury believed only that Defendant conspired with Mr. Terence Douglas to commit the underlying substantive offenses, Counts 26, 27, and 28, on November 19, 1993. We also can reasonably infer the inverse, that the jury did not believe Defendant conspired with the other five alleged coconspirators throughout an entire year to commit the multiple offenses charged in the indictment. The notation could reflect a belief that Defendant conspired with one or more

---

[3] The jury was unable to reach a unanimous verdict on the remaining two counts. Those counts were subsequently dismissed.

alleged coconspirators prior to November 19, 1993, to commit the offense charged on that date. Another reasonable interpretation might be that Defendant could not be the leader of the year-long conspiracy alleged in the indictment because he only participated in a narrower conspiracy on a particular date. These interpretations are supported not only by the words of the notation itself but also by the questions the jury asked regarding the conspiracy charge and the court's answers to those questions. The jurors essentially wanted to know if Defendant could be guilty of the conspiracy in Count 1 if he participated in a subset of transactions on a particular date with one other person. See R., Vol. III, Doc. 726, Jury Exhs. 7-20. The court answered affirmatively.

Although there are several different ways to state what the notation could reasonably mean, the variations in language or phraseology do not change the core meaning of the jury's notation. The only reasonable interpretation of the jury's notation is that the jury was not convinced beyond a reasonable doubt that Defendant participated in the single broad conspiracy alleged in the indictment.[4] When read in light of the jury questions to the court, the court's answers and instructions, and our reasonable interpretation of the notation, we conclude that the jury's notation qualified its verdict. The district court should have made some inquiry into the meaning of the notation to

_____

[4] We recognize that the notation also could be viewed as a veiled plea for leniency. This interpretation differs in substance from the reasonable interpretation we have determined represents the essence of the jury's notation. However, a plea for leniency does not qualify the verdict and must be discounted by the district court. See Rogers, 422 U.S. at 38.

resolve this qualification.  Because the district court did not inquire, we must determine whether that failure constituted reversible error.

The court's failure to inquire would require a reversal only if an inquiry would have revealed a reasonable interpretation of the notation which would have cast doubt on the jury's finding that Defendant conspired to commit the crimes charged in Counts 26, 27, and 28.  Cf. Morris, 612 F.2d at 490-91 (finding reversible error in court's failure to resolve doubt about jury's guilty verdict).  We have determined that the jury's notation can only reasonably mean that Defendant did not participate in the single broad conspiracy alleged in the indictment, and we have already examined the question of alternative reasonable interpretations.  We cannot hypothesize an alternative interpretation,[5] and have not been provided one by Defendant, which casts doubt on the finding that Defendant conspired to commit the offenses charged in Counts 26, 27, and 28.  Defendant contends only that the notation meant the jury found him not guilty of the broader conspiracy charged in the indictment and guilty of a narrower conspiracy not charged.  Defendant's argument presents us with a variance issue, but it does not provide us with a reasonable alternative interpretation casting doubt on the jury's verdict.  Although the jury's notation qualified the verdict on Count 1, we do not doubt that the jury was convinced beyond a reasonable doubt that Defendant participated in a conspiracy

_____

[5] One alternative explanation of the notation, that of a veiled plea for leniency, was properly discounted by the district court.  Ailsworth, 948 F. Supp. at 1503; see Rogers, 422 U.S. at 38.

relating to Counts 26, 27, and 28.  We therefore cannot conclude that the district court's failure to inquire constitutes reversible error.  We are left with the question of whether a variance occurred, and, if so, whether it substantially prejudiced Defendant's rights.

## II.

"A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment."  United States v. Edwards, 69 F.3d 419, 432 (10th Cir. 1995) (internal quotation marks omitted) (quoting Dunn v. United States, 442 U.S. 100, 105 (1979)), cert. denied sub nom., Chaplin v. United States, ___U.S.___, 116 S. Ct. 2497 (1996); see United States v. Powell, 982 F.2d 1422, 1431 (10th Cir. 1992), cert. denied, 508 U.S. 917 (1993).  The variance is reversible error only if it affects the substantial rights of the accused.  See Berger v. United States, 295 U.S. 78, 82 (1935). "Accordingly, where a single conspiracy is charged in the indictment, and the government proves only multiple conspiracies, a defendant who suffers substantial prejudice must have his conviction reversed."  Edwards, 69 F.3d at 432 (citing Kotteakos v. United States, 328 U.S. 750, 773-74 (1946)).

Defendant argues that the evidence was insufficient to convict him of the single conspiracy alleged in Count 1.  Specifically, he contends that the government's evidence showed, at best, that Defendant participated in one of numerous separate and independent conspiracies.  This case is factually different from most of the preceding law analyzing

whether a variance exists.  See Kotteakos, 328 U.S. at 766-67; Edwards, 69 F.3d at 432-33; Powell, 982 F.2d at 1431; United States v. Mobile Materials, Inc., 881 F.2d 866, 872 (10th Cir. 1989), cert. denied sub nom., Philpot v. United States, 493 U.S. 1043 (1990). Previous cases discuss variances in the context of two or more defendants appealing their convictions for a single broad conspiracy because they believe the convictions are at odds with the government's proof of multiple conspiracies.  See id.  In those cases, there is no dispute that the jury in fact found the defendants guilty of the single conspiracy charged in the indictment.  In this case, however, we have already determined that the only reasonable meaning of the jury's notation is that the jury did not believe the government's evidence that Defendant participated in the single widespread conspiracy alleged in the indictment.  This jury rejected the government's theory and proof of one broad conspiracy ongoing between March 1993 and March 1994.  The legal effect of the jury's verdict, however, is that Defendant was convicted on Count 1, even though the jury was persuaded that Defendant participated only in *a* conspiracy to commit crimes on November 19, 1993.

We have held repeatedly that whether the evidence established a single conspiracy is a question of fact for the jury.  See Powell, 982 F.2d at 1431 (citing United States v. Dickey, 736 F.2d 571, 581 (10th Cir. 1984), cert. denied sub nom., Beasley v. United States, 469 U.S. 1188 (1985)).  Therefore, although the district court may have found the evidence supporting a single widespread conspiracy convincing, see Ailsworth, 948 F.

-10-

Supp. at 1499-1500, the jury did not, or it would not have made the notation, "As related to Counts # 26, 27, and 28 on 11/19/93 only." R., Vol. II, Doc. 720 at 1. The record confirms this conclusion. For instance, the jury asked several questions regarding the law of conspiracy, such as whether a conspiracy can occur between Defendant and only one other person on only one occasion. See R., Vol. III, Doc. 726 at Jury Exh. 9. Although the jury found Defendant guilty of crimes occurring on days other than November 19, 1993, it clearly did not believe beyond a reasonable doubt that Defendant conspired to commit those crimes. See R., Vol. I, Doc. 287; Vol. II, Doc. 720.

We hold that a variance exists because the evidence presented at trial proved facts different from the single widespread conspiracy alleged in the second superseding indictment. The government's evidence only established beyond a reasonable doubt that Defendant participated with at least one other person in a conspiracy on November 19, 1993. According to the jury's notation, the evidence did not establish that Defendant was guilty of the broader conspiracy alleged in Count 1. However, even where a variance exists, we will reverse Defendant's conviction only upon a showing of substantial prejudice. See Edwards, 69 F.3d at 432-33.

A variance between the indictment and the proof is reversible error only if it has affected the substantial rights of the defendant. See Berger, 295 U.S. at 82. Defendant contends that his rights were prejudiced by the admission of evidence tending to show other conspiracies in which the jury did not believe he participated. The requirement that

allegations and proof correspond is intended to safeguard basic Fifth and Sixth Amendment rights of the accused. See United States v. Stoner, 98 F.3d 527, 536 (10th Cir. 1996). The accused must (1) be informed of the charges against him so that he may present his defense and not be surprised by the evidence offered at trial; and (2) be protected against another prosecution for the same offense. See Berger, 295 U.S. at 82; Stoner, 98 F.3d at 536. A variance "is not fatal unless the defendant could not have anticipated from the indictment what evidence would be presented at trial or unless the conviction based on an indictment would not bar a subsequent prosecution." 3 Charles Alan Wright, Federal Practice and Procedure § 516, at 27 (2d ed. 1982); see Stoner, 98 F.3d at 536-37. We also have adopted the Supreme Court's holding that there is no fatal variance where a defendant "is convicted upon evidence which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment." Mobile, 881 F.2d at 874 (citing United States v. Miller, 471 U.S. 130, 135-40 (1985)).

There has been no showing that the variance prejudiced the fairness of Defendant's trial in any way. Although the second superseding indictment charged a broad conspiracy among seven individuals to possess and distribute cocaine base or crack cocaine between March 1993 and March 1994 in Count 1, it also alleged many specific offenses which made up that widespread conspiracy. The jury in this case found Defendant guilty of six underlying substantive offenses. The jury believed that Defendant

conspired to commit three of those offenses, charged in Counts 26, 27, and 28, with Mr. Douglas on November 19, 1993. The evidence proving these charges, while narrower than the conspiracy alleged in Count 1, did not extend or broaden the indictment in any way. See Miller, 471 U.S. at 140-45. The government did not offer proof of new facts or new offenses not alleged in the indictment. See id. at 138. Defendant, therefore, was not prejudicially surprised at trial by evidence proving that Defendant conspired to commit the offenses on November 19, 1993. Defendant had notice that his activities on November 19, 1993, were part and parcel of the larger, single conspiracy alleged in Count 1. The conspiracy to distribute cocaine base or crack cocaine was fully included within the indictment. The indictment was sufficiently explicit to inform Defendant of the charges against him and to protect him from double jeopardy. See id. at 144-45; United States v. Hazeem, 679 F.2d 770, 773-74 (9th Cir.), cert. denied, 459 U.S. 848 (1982). We are not persuaded by Defendant's argument that he was convicted for an offense not charged in the indictment.

The discrepancy between the allegation in Count 1 and the proof at trial did not taint Defendant's conviction where he was the only individual on trial. As noted above, we have frequently analyzed variances in the context of multiple defendants appealing their convictions. Typically, a variance is prejudicial when guilt is imputed to the defendant from other defendants' conduct. See Kotteakos, 328 U.S. at 775-77. For example, "guilt is transferred to the defendant from 'incriminating evidence presented in

connection with the prosecution of another in the same trial for a crime in which the accused did not participate.'"  Powell, 982 F.2d at 1431 (quoting Dickey, 736 F.2d at 581 (citation omitted)).  In Kotteakos, thirty-two persons were indicted, nineteen defendants were brought to trial, thirteen names were submitted to the jury, and at least eight separate conspiracies were proved.  In this case, however, Mr. Ailsworth and six other persons were indicted, Mr. Ailsworth was the only defendant on trial because the six alleged coconspirators made plea arrangements prior to trial, and the evidence proved two conspiracies at most.  Compare Kotteakos, 328 U.S. at 753, 766-71, with Berger, 295 U.S. at 79-84, and United States v. Wright, 932 F.2d 868, 874-75 (10th Cir.) (holding harmless a variance occurring when government's evidence at trial proved existence of two conspiracies rather than one broad conspiracy charged in the indictment), cert. denied, 502 U.S. 962 (1991).  "The sheer difference in numbers, both of defendants and of conspiracies proven, distinguishes the situation."  Kotteakos, 328 U.S. at 766.  In this case, we have no concern that the evidence was not considered separately as to each individual defendant because Mr. Ailsworth was the only individual on trial.  See United States v. Evans, 970 F.2d 663, 674-75 (10th Cir. 1992), cert. denied, 507 U.S. 922 (1993).

The district court's instructions also safeguarded Defendant from any potential prejudice flowing from evidence attempting to establish the existence of one broad conspiracy.  The court repeatedly instructed the jury that Defendant was on trial only for the charges contained in the indictment and answered the jury's questions regarding the

doctrine of conspiracy. "It's presumed that [the jury] followed those instructions." R., Vol. XXII at 1642; see Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985); Mason v. Oklahoma Turnpike Auth, 115 F.3d 1442, 1456 (10th Cir. 1997).

Whether Defendant's substantial rights were prejudiced also depends on whether the evidence was sufficient for the jury to convict Defendant of a separate conspiracy. To obtain a conviction for conspiracy, the government must prove that (1) there was an agreement to violate the law; (2) Defendant knew the essential objectives of the conspiracy; (3) Defendant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent. See United States v. Richardson, 86 F.3d 1537, 1546 (10th Cir.), cert. denied, ___U.S.___, 117 S. Ct. 588 (1996). We review the sufficiency of evidence in a light most favorable to the government to determine if there was sufficient evidence upon which a reasonable jury could find the existence of a conspiracy beyond a reasonable doubt. See United States v. Daily, 921 F.2d 994, 1007 (10th Cir. 1990), cert. denied, 502 U.S. 952 (1991).

Defendant specifically contends that the government did not prove interdependence because its evidence tended to establish some transactions involving the exchange of food stamps for cash and others involving the exchange of food stamps for cocaine base. See Appellant's Br. at 23. Interdependence exists if "the alleged coconspirators were united in a common unlawful goal or purpose," Daily, 921 F.2d at 1007, and if a defendant's activities facilitated the endeavors of another alleged

coconspirator or facilitated the venture as a whole. Id. The record reveals that the proof of Defendant's guilt in Counts 26, 27, and 28, and in a conspiracy to commit those offenses, was strong. An agent of the United States Department of Agriculture, a representative of Cellular One, and Defendant's coconspirator testified about Defendant's role and participation. See Ailsworth, 948 F. Supp. at 1499; R., Vol. XVII at 402-09, 412-13; Vol. XIX at 464, 704-14, 717-19; Vol. XXI at 1148, 1167-68, 1180. Defendant's actions on November 19, 1993, were captured on tape and played for the jury. R., Vol. XIX at 722-24. Moreover, "[s]eparate transactions are not separate conspiracies, as long as the activities were aimed at a 'common, illicit goal.'" Powell, 982 F.2d at 1431 (citation omitted); see Daily, 921 F.2d at 1008. The evidence supports the jury's finding of interdependence because it shows the coconspirators, Defendant, and at least Mr. Douglas, were united in a common, unlawful goal to possess and distribute cocaine in exchange for food stamps on November 19, 1993. Id. After reviewing the record, we are satisfied that, viewed in a light must favorable to the government, the evidence was sufficient for the jury to find Defendant guilty beyond a reasonable doubt of conspiring with Mr. Douglas to commit the three offenses charged in Counts 26, 27, and 28. See Daily, 921 F.2d at 1007. We conclude that the variance did not prejudice Defendant's substantial rights and therefore is not reversible error.[6]

---

[6] Had Defendant argued that the variance prejudiced him at sentencing, this argument would have no merit. A sentencing court can consider all relevant conduct in determining a defendant's base offense level. See United States Sentencing Guidelines

## III.

Finally, Defendant contends that the district court abused its discretion in giving the jury multiple <u>Allen</u> instructions because the instructions coerced the jury into a guilty verdict on Count 1.  Although we urge caution in the use of an <u>Allen</u> instruction, "[w]e review whether an <u>Allen</u> instruction was erroneously given on a case-by-case basis." <u>United States v. Rodriguez-Mejia</u>, 20 F.3d 1090, 1091 (10th Cir.), <u>cert. denied</u>, 513 U.S. 1045 (1994).

The circumstances under which the <u>Allen</u> instructions were given in this case lead us to conclude that the court's use of that instruction did not coerce the jury's verdict. The content of the <u>Allen</u> instruction given to the jury in this case is identical to or indistinguishable from others we have previously approved.  <u>See</u> <u>United States v. Reed</u>, 61 F.3d 803, 804-05 & n.5 (10th Cir. 1995); <u>United States v. Butler</u>, 904 F.2d 1482, 1487-88 (10th Cir. 1990); <u>United States v. Porter</u>, 881 F.2d 878, 888-89 & n.14 (10th Cir.), <u>cert. denied</u>, 493 U.S. 944 (1989).  The instruction was properly given to the entire jury. <u>See</u> <u>Rodriguez-Mejia</u>, 20 F.3d at 1092.  The court also properly reminded the jurors that "no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence."  R., Vol. XXII at 1616; <u>see</u> <u>Reed</u>, 61 F.3d at 805; <u>Rodriguez-Mejia</u>, 20 F.3d at 1092.

---

§ 1B1.3(a).  Therefore, even if Defendant had been acquitted on Count 1, the court could have considered the charged conduct and drug quantities in Count 1 in determining Defendant's sentence.

The timing of the Allen instructions also was not problematic. The court first gave an Allen instruction to the jury when it charged the jury before deliberations began. See R., Vol. XXII at 1501-02. Prior to the jury's announcement that further deliberations would not be helpful, the court stated to counsel that it would probably give the jury an Allen instruction if the jury continued to deliberate for a few days, regardless of whether it was deadlocked. See R., Vol. XVII at 1605-06. The second Allen instruction occurred after the jury deliberated for four days, returned a partial verdict, and announced that it was deadlocked. We have held that an Allen instruction given during deliberations or after a jury has announced a deadlock is not per se coercive. See Reed, 61 F.3d at 805; Porter, 881 F.2d at 889. The jurors also were given a copy of the second Allen instruction when they reentered deliberations the following day. We have consistently held that a court may, in its own discretion, submit written instructions to the jury. See John A. Henry & Co. v. T.G. & Y Stores Co., 941 F.2d 1068, 1073 (10th Cir. 1991); United States v. Calabrese, 645 F.2d 1379, 1388 (10th Cir.), cert. denied, 451 U.S. 1018, and 454 U.S. 831 (1981). Additionally, the jury's deliberations for several hours during two additional days following the second Allen instruction negate any coercive effect of that instruction. See Rodriguez-Mejia, 20 F.3d at 1092. Further, we agree with the district court's assessment of the results of its second Allen instruction: That the jury was unable to reach a unanimous verdict on two remaining counts demonstrates that it "was not compelled or coerced to reach a unanimous verdict." Ailsworth, 948 F. Supp. at 1505.

-18-

We conclude that the district court did not err in giving the jury two <u>Allen</u> instructions and a copy of the second instruction.[7] Neither the cumulative nor individual impact of those instructions coerced the jury into a guilty verdict on Count 1.

We therefore AFFIRM the district court's denial of Defendant's Motion for Judgment of Acquittal.

AFFIRMED.

---

[7] We note that a copy of the first <u>Allen</u> instruction was included with the rest of the instructions given to the jury in its deliberations. It is common practice and not erroneous to submit to the jury written copies of instructions to help them in their deliberations, especially in complex cases.