734 So.2d 455 (1999)
D.R., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2982.
District Court of Appeal of Florida, First District.
May 5, 1999.
*456 Nancy A. Daniels, Public Defender; and P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; and Karla D. Ellis, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
Seventeen-year-old D.R. appeals the ruling of the trial court adjudicating him delinquent for the offenses of burglary of a dwelling (Count One) and grand theft (Count Two), and committing him to a Level 6 boot camp. D.R.'s theory of defense in Count One was that he believed he had consent to enter the dwelling, which was Eric Brandon's trailer. Challenging the adjudication in Count One, D.R. submits that once he offered evidence to establish consent to enter the trailer as an affirmative defense to burglary, the burden shifted to the State to disprove the consent defense beyond a reasonable doubt, and the State failed to satisfy its burden. Hansman v. State, 679 So.2d 1216 (Fla. 4th DCA 1996); Coleman v. State, 592 So.2d 300 (Fla. 2d DCA 1991) (owner of residence's testimony was sufficiently ambiguous on subject of consent to preclude burglary conviction of Coleman, who had entered residence to flush cocaine down toilet; owner testified that her teenage son may have given permission after Coleman sought his permission to enter, and that, in pretrial deposition, owner herself had indicated having given him permission). We agree that the State failed to meet its burden in Count One. As to Count Two, D.R. contends that the State failed to present competent evidence to show that he committed grand theft, and that the conviction cannot rest solely on a prior, unsworn inconsistent statement of a witness who subsequently recanted. Green v. State, 667 So.2d 789 (Fla. 1st *457 DCA), approved as to that issue, 667 So.2d 756 (Fla.1995) (prior inconsistent statement of recanting alleged victim of child sexual abuse was insufficient, by itself without proper corroborating evidence, to sustain conviction, even if repeated by victim on multiple occasions); State v. Moore, 485 So.2d 1279, 1281 (Fla.1986) ("[I]n a criminal prosecution a prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt."). We agree that the State's evidence failed to link D.R. to the grand theft beyond a reasonable doubt. Accordingly, we reverse the adjudication of delinquency as to both counts and remand with directions that D.R. be discharged from both offenses.
Count One of the amended petition alleged that between September 20-24, 1997, D.R. "did unlawfully enter or remain in a structure," the dwelling of Eric Brandon on Lot 12, "with intent to commit the offense of theft or some offense therein." The pertinent sections of the burglary statute state:
810.02 Burglary.___
(1) "Burglary means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
* * *
(3) Burglary is a felony of the second degree .... if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:
* * *
(b) Dwelling, and there is not another person in the dwelling at the time the offender enters or remains;
§ 810.02, Fla. Stat. (1997). The three essential elements of burglary of a dwelling are 1) knowing entry into a dwelling, 2) knowledge that such entry is without permission, and 3) criminal intent to commit an offense within the dwelling. T.S.J. v. State, 439 So.2d 966, 967 (Fla. 1st DCA 1983).
D.R. admitted the first element, "knowing entry." The period of time in question here is Saturday the 20th through Wednesday the 24th. Eric Brandon testified that he left his trailer on Friday the 19th and returned on Monday the 22nd, when he discovered that his $800 stereo, a $30 cellular phone, and some jewelry were missing from the residence. He said the window in Brandon's son's bedroom had been forced open and the screen forced through; the inside metal was forced in an upward direction. Brandon said the window space had not been broken, nor were the items missing, when he last visited the place on Friday the 19th. Prior to this incident, a teenager named Marcus had introduced Brandon to D.R., who needed a place to stay. Initially, D.R. was allowed to stay in the back seat of Brandon's car because Brandon did not want him in the house with Brandon's wife and son. However, after Brandon's car was repossessed, he let D.R. stay on the family couch in the residence for a couple of days right before the power was cut off and the Brandons moved out.
Brandon testified that on Friday the 19th he told D.R.: "Everything's cut off. I can't stay here with a four-month-old son, so I'm going to have to move back to my place in Quincy." Brandon offered to drop off D.R. somewhere. but D.R. said he preferred to walk up the road to his friend Andrew's house. Brandon told D.R. that they were leaving on that day and that D.R. should try to get back with them on Monday, when they would be around. Brandon testified that at that point, he and his family locked up the residence and left for the weekend. The lights had been cut off in the trailer. Brandon testified that *458 D.R. knew they were moving out and were planning to come back to get the rest of their belongings because their small car could not carry many of their personal items. Brandon agreed that it is a fair statement that D.R. was not permitted to be in the residence after the power was turned off and it was locked up. Of the stolen property, only the cellular phone was returned to Brandon.
Brandon testified further that upon returning to the trailer on Monday the 22nd, he had talked to the neighbors to find out what had happened. Other than Marcus and Andrew, D.R. was about the only person who knew the Brandons were away that weekend. Brandon had asked Marcus to inquire of Andrew whether D.R. knew anything about the break-in. Andrew returned the cellular phone to Brandon on that same Monday.
On cross-examination, Brandon denied that D.R. had ever lived with him, but he admitted telling the police that he had known D.R. briefly, that D.R. had stayed on the couch for a couple of days, and that D.R. had been allowed to get some food if he was hungry. On redirect, Brandon, who had never asked D.R. for money in exchange for staying in the residence, said that he had let D.R. stay there out of the goodness of his heart. D.R. had spent two of the four days in the back seat of Brandon's car.
Mary Rae Keene, the Brandons' neighbor on Lot 13, testified that she had met D.R. when he was "staying with" or "living with" Brandon. After the power and water were cut off, Keene observed D.R. going in and out of the door of Brandon's trailer during the weekend in question. She said that D.R. had stayed in the residence by himself but that she had seen another boy visit the premises. A pizza delivery guy came by the residence during that period of time too. Another automobile pulled up as well, but darkness prevented Keene from observing what was happening then. After she became aware of the report of a burglary, Keene told the police what she had seen. Keene neither saw D.R. go through the window of the trailer nor observed him carrying out anything.
At the end of the State's case, defense counsel moved for a judgment of acquittal on both counts. Regarding Count One, counsel argued that the State had not made a prima facie case of burglary of the dwelling. The motion was denied, and the defense presented its case. D.R., who was 15 years old at the time of the offenses, testified that after Marcus introduced him to 18-year-old Brandon, D.R. had lived with Brandon and his 16-year-old wife and their baby for about two weeks. Prior to that, D.R. had run away from Disc Village, where he had been placed by virtue of his family's wishes rather than because of a sanction related to any delinquency. D.R. said that on one occasion, "Rick" (Brandon) had locked his house keys in the residence and had asked D.R. to go through the window of the baby's room to open up the place. The screen already was ripped because it was an old trailer, and the screen was not connected to the window. Brandon first had stuck his hand inside, turned something, and opened the window, but he was too large to fit through the window space. Accordingly, he asked D.R. to crawl through the window and open the front door.
D.R. testified that on Friday the 19th, Brandon said he was planning to move out and was going to stay at Brandon's mother's place because the lights in the trailer had been cut off. After this conversation with Brandon, D.R. talked to his own mother, after which he decided to return to the trailer and eat supper. D.R. testified: "[A]t that point, I didn't know if I was going to be coming back or not." It was his understanding that he could come back to the trailer to get his clothes. D.R. testified that Brandon had told him that Brandon would be going there during the weekend to move his stuff, and that D.R. could come in and get his clothes in the back part of the residence whenever he *459 wanted to on that weekend. On Saturday the 20th, D.R. and a friend went to the trailer to move D.R.'s own belongings. D.R. said Brandon had left the front door unlocked. D.R. testified that he went in and got his clothes, and "that's it." He denied taking anything other than his clothes from the trailer. Furthermore, he denied knowing anything about the stereo or the cellular phone, and he said he had not given the cellular phone to Andrew. D.R. indicated that he had waited at the trailer for Brandon for a while but that he never saw Brandon during the weekend.
At the end of all the evidence, defense counsel argued that D.R. had offered a reasonable hypothesis of innocence to explain why he had entered and remained in the trailer during the weekend. In response, the State relied on Brandon's conclusion that after the Brandons began their move from the trailer, D.R. lacked permission to enter and remain in the residence during that weekend. The trial court found that the State had proved its case in Count One.
In moving for a judgment of acquittal, D.R. "admitted the facts adduced in evidence and every conclusion favorable to the [State] which is fairly and reasonably inferable therefrom." Spinkellink v. State, 313 So.2d 666, 670 (Fla.1975), cert. den., 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); United States v. Ailsworth, 138 F.3d 843, 846 (10th Cir. 1998) (denial of motion for J.O.A., and issue of whether trial court applied correct rule of law, are subject to de novo review, with the evidence to be viewed in the light most favorable to the non-moving party); State v. Law, 559 So.2d 187, 188-89 (Fla. 1989). In Count One, we must determine whether the trier of fact could have found D.R. delinquent as to the essential elements of burglary of a dwelling beyond a reasonable doubt.
Although D.R. admitted the first element knowingly entering the dwellinghe denied the second (knowledge of unpermitted entry) and third (criminal intent) elements. The defense never argued, nor does the record suggest, that Brandon's trailer was "open to the public" for purposes of section 810.02(1), Florida Statutes (1997), at the time of the offenses. Instead, the theory of defense was that D.R. was "licensed or invited to enter or remain" in the residence at the time of entry and had no knowledge that such entry was without permission. Clearly, when Eric Brandon permitted D.R. to enter the trailer and to stay several nights on the couch, D.R. had a "license or invitation," i.e., consent to be there. The State asserted, however, that by Friday the 19th, when the lights and water were cut off and Brandon informed D.R. that he and his family were moving their things back to Quincy, any prior license or invitation for D.R. to enter and remain in the trailer was effectively withdrawn.
As lack of consent to entry is not a threshold element of burglary of a dwelling, the State was not required to allege and prove it. State v. Hicks, 421 So.2d 510, 511 (Fla.1982); Strachn v. State, 661 So.2d 1255 (Fla. 3d DCA 1995). In subsection (1) of the burglary statute, the term "unless" qualifies the primary sentence and separates the consent provision from the enacting clause. Consent to enter is an affirmative defense to burglary. Hicks, 421 So.2d at 511; Strachn, 661 So.2d at 1256; Coleman, 592 at 301. D.R. had the burden initially to offer evidence to establish the consent defense, and he did so. D.R. testified that he understood that he still had Brandon's permission to enter the residence to retrieve his clothing, which Brandon knew was still inside. Hansman and Coleman support D.R.'s claim that after he met his burden, the burden shifted to the State to disprove the defense beyond a reasonable doubt. Hansman, 679 So.2d at 1216 (where Hansman testified that a third resident had given him permission to enter the house, the State failed to meet its burden of disproving consent to enter by presenting the testimony of two other residents, who *460 either were not asked or did not know whether the third resident had given permission); Coleman, 592 So.2d at 300. The State failed to satisfy its burden to disprove consent. Brandon's claim that it is a fair statement to say that D.R. was not permitted to be in the residence during the weekend in question goes no farther than to indicate Brandon's own belief and state of mind. Nothing in the record suggests that consent to enter, once given to D.R., was ever withdrawn expressly or by implication and communicated to him. Significantly, when the prosecutor asked Brandon whether he had ever told D.R. that "he could no longer be in the trailer," Brandon gave an equivocal and unresponsive answer. All the State proved is that on Friday the 19th, Brandon informed D.R. that the family was moving out, that the power was cut off, that some of their belongings remained in the trailer, and that they would return to get their things. The prosecutor did not ask a follow-up question that might have elicited a clearer response as to whether Brandon adequately communicated the withdrawal of consent for D.R. to enter the residence. Cf. Young v. State, 695 So.2d 819 (Fla. 4th DCA 1997) (trial court properly denied motion for J.O.A. on charge of armed burglary of a dwelling with assault of battery, where Young's affirmative defense was that he was "licensed or invited to enter or remain" in victim's dwelling, and victim testified that after she asked Young to return his key to her house during an argument several hours before crime, Young threw key at her and immediately left the premises, returning later that evening to commit charged offense). As the State failed to prove D.R.'s knowledge that entry was without permission, the adjudication of delinquency in Count One must be reversed.[1]
Assuming arguendo that the State had proven the second element, we still would be compelled to reverse the adjudication on Count One because the State failed to offer competent evidence to prove D.R.'s criminal intent to commit an offense within the dwelling. This third element of burglary of a dwelling in Count One is interrelated to the grand theft charge in Count Two. Fifteen-year-old Andrew, who purported to be D.R.'s friend, testified that he never received the cellular phone from D.R. despite telling Marcus that he had, indeed, received the phone from D.R. Andrew testified that when Marcus informed him that "the man" had some stuff stolen from his residence, Andrew himself had the cellular phone and "didn't want to be involved." Subsequently, Andrew and Marcus took the phone to Brandon, who identified it as his missing property. Andrew testified that because Marcus told him that D.R. had stolen some "stuff" from the residence, Andrew figured it would be easier simply to tell Brandon that D.R. had stolen it than to say where Andrew actually had gotten it. Although Andrew acknowledged he was not sure whether D.R. had stolen the phone, Andrew testified that he had received it from "a boy in Rockbrook" whom he did not really know, and not from D.R. Andrew said he had paid the boy $15 for the phone. Thus, although the statement was not true, Andrew testified that he told Brandon that D.R. had given him the phone. Andrew explained that he had named D.R. out of fear of getting in trouble for growing marijuana *461 in his closet. Andrew did not think anyone would believe him if he claimed to have gotten the phone from somebody in Rockbrook, and he was afraid someone would search his house. Andrew testified that the police never interviewed or spoke to him about the burglary and theft.
Fifteen-year-old Marcus testified that he knew D.R. through Andrew. After hearing about the burglary, Marcus had gone to Andrew's house on Monday the 22nd and told Andrew about the incident. After Andrew showed Marcus the cellular phone, the two boys walked to Brandon's place and gave it to him. Brandon identified it as his phone.
In this case, whether the State proved the third element of burglary___ D.R.'s criminal intent to commit theft or some other offense___is closely related to whether the State proved grand theft in Count Two. Count Two of the amended petition alleged that D.R. knowingly obtained, used, or endeavored to obtain or use, Brandon's stereo and/or cellular phone. The stolen stereo was never found, and nothing in the record linked D.R. to the recently stolen stereo or to the missing jewelry. Without the stereo, the charged offense would constitute, at most, petit theft. The sole evidence linking D.R. to the cellular phone was Andrew's initial comment to Brandon that D.R. was the person who had given him the item. Andrew's remark to Brandon obviously was unsworn and was not made under circumstances where Andrew was subject to cross-examination. In other words, Andrew initially implicated D.R. under circumstances with no safeguards to assure Andrew's reliability or truthfulness. Subsequently, at the adjudicatory hearing, witness Andrew totally recanted his earlier statement: he explained that he had received the phone from someone else and had implicated D.R. simply to avoid getting into trouble himself. D.R. denied knowing anything about the stereo and the phone, and he denied taking anything from the trailer other than his own personal belongings. In a prosecution for burglary of a dwelling, a defendant's intent to commit an offense "may be inferred from his stealthy entry." Baker v. State, 622 So.2d 1333, 1336 (Fla. 1st DCA 1993) (evidence was sufficient to show Baker had entered stealthily into curtilage, and thus had intent to commit burglary, where he entered fenced yard and sought entry through rear window, the front of the house was hidden from road by trees and shrubbery, and yard was secluded due to fencing and shrubs). The instant record shows no such stealthy entrance. Under these circumstances, where Andrew's unsworn, prior inconsistent statement was the sole link between D.R. and the stolen phone, and Andrew subsequently testified under oath that someone else, and not D.R., gave him the phone, the adjudication of delinquency for theft (grand or petit) cannot stand. Moore, 485 So.2d at 1279; Green, 667 So.2d at 789.
Thus, our determination as to Count Two affects Count One because the absence of competent evidence to prove D.R.'s theft of the cellular phone or the stereo, and the failure to show his entering or remaining in the dwelling "with the intent to commit an offense therein," render the third element of burglary of a dwelling unproven.
As the State failed to prove either burglary of a dwelling or grand theft, we REVERSE the disposition order and REMAND with directions to the trial court to discharge D.R. from both offenses.
MINER and BENTON, JJ., CONCUR.
NOTES
[1] Unlawful trespass is a lesser-included offense of burglary of a dwelling. K.H. v. State, 620 So.2d 1114 (Fla. 5th DCA 1993) (where the State failed to prove juvenile K.H.'s intent to commit an offense within the dwelling, the evidence was insufficient to establish burglary of a dwelling, but the evidence adduced was sufficient to prove unlawful trespass). However, although the State proved willful entry, it failed to satisfy the elements of the trespass statute by proving either 1) that D.R. willfully entered or remained in the "structure or conveyance" without being authorized, licensed, or invited; or 2) that having been authorized, licensed, or invited, D.R. was warned by the owner or lessee of the premises to depart and refused to do so. § 810.08, Fla. Stat. (1997); State v. Jackson, 281 So.2d 353, 354-55 (Fla. 1973) ("Where the one entering a building has permission to enter, either express or implied, there is no trespass and, therefore, no breaking and no burglary.").