FILED
United States Court of Appeals
Tenth Circuit

April 12, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

IBRAHIMA KANE,

     Defendant-Appellant.

No. 11-3335

(D.C. No. 2:09-CR-20133-JWL-11)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.
_____

A jury convicted Defendant Ibrahima Kane of one count of conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii). He now appeals his conviction on four grounds. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I.

The facts relating to the larger marijuana trafficking conspiracy involved in this case are set forth more fully in United States v. Stephen Blackburn, --- F. App'x ---, No. 11-3294 (10th Cir. 2013) (unpublished). Defendant's active role in the conspiracy ended on May 2, 2007, when police executed a search warrant on a house in Avondale, Arizona.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Police arrested Defendant along with four other men—Sheldon McIntosh, Samora McIntosh, Dwight Rhone, and Theodore McDowell. Officers had arrested the conspiracy's ringleader, Curtis Pitter, a few hours earlier when he left the house in a van carrying saran-wrap style packaging with small amounts of marijuana stuck to it. A vehicle in the house's garage contained approximately 630 pounds of marijuana in thirty boxes. The marijuana was wrapped in plastic and grease. Inside the house, police found drug packing materials and $223,000 in cash hidden in a suitcase and a spare tire.

After Defendant's arrest, an Arizona jury convicted him on state drug charges. Later, a federal grand jury in the United States District Court for the District of Kansas indicted him and nineteen other people on various drug-trafficking and money laundering charges. Specifically, the superseding indictment charged Defendant with conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. At trial, the jury heard evidence linking Defendant and the Avondale house with a larger drug trafficking conspiracy headed by Curtis Pitter. The evidence showed that the conspirators would usually drive or ride the bus from Kansas City, Missouri, to Phoenix, Arizona, carrying cash. They would then purchase marijuana, package it so as to reduce the smell, and ship it by UPS ground to Kansas City and sometimes other destinations. They would then fly back to Kansas City and repeat the process. Devon Thomas, a member of the conspiracy, testified the conspirators would frequently fly through Las Vegas because "it's easier to take large quantities of money through Las Vegas because of gambling." Record on Appeal ("ROA"), vol. II at 1437–38.

The jury heard that in November 2007 narcotics officers seized $139,980 in cash

from one conspirator, Gladstone McDowell, who was traveling westbound on Highway 54 in the Oklahoma panhandle. It also heard that the ringleader, Pitter, mailed sixteen boxes of marijuana in June 2009 from a UPS store in Mesa, Arizona. Federal agents seized eight of these boxes, containing 200 pounds of marijuana, at a UPS distribution facility in Kansas City, Kansas. Finally, the jury heard that Gladstone McDowell purchased a residence on Oldham Road in Kansas City, Missouri, in 2005 with cashier's checks that had been sent from Jamaica. Closing for the purchase took place in Leawood, Kansas. The jury convicted Defendant of the charged conspiracy. The district court then sentenced him to 66 months' imprisonment after reducing his sentence from 120 months to reflect the 54 months he had served in Arizona based on the same conduct. See U.S.S.G. § 5G1.3(b)(1).

On appeal, Defendant makes the following arguments: (1) the evidence at trial fatally varied from the indictment, (2) the evidence was insufficient to show his participation in the conspiracy, (3) the Government failed to prove venue was proper in the United States District Court for the District of Kansas, (4) no probable cause supported the search warrant for the Avondale residence, and (5) the Government violated his rights under the Interstate Agreement on Detainers.

II.

Defendant first argues the evidence at trial varied from the indictment in two ways—the duration of his involvement in the conspiracy and the quantity of marijuana trafficked. "A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." United States v. Acosta-Gallardo, 656

F.3d 1109, 1116 (10th Cir. 2011) (quoting United States v. Ailsworth, 138 F.3d 843, 848 (10th Cir. 1998)). We review de novo whether a variance occurred, viewing the evidence and drawing reasonable inferences in the government's favor. Id. A variance is only reversible error if it "affects the substantial rights of the accused." Id. (quoting Ailsworth, 138 F.3d at 848).

A.

We turn first to the length of Defendant's involvement in the conspiracy. The Superseding Indictment alleged the following:

> From in or about May, 2000 . . . and continuing to on or about November 4, 2009, both dates being approximate and inclusive in the District of Kansas and elsewhere, the defendants [names of nineteen persons, including Defendant] knowingly, and intentionally combined, conspired, confederated, and agreed together . . . to intentionally distribute and possess with intent to distribute 1000 kilograms or more of a mixture and substance containing marijuana, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vii).

Record on Appeal vol. I, at 76–77.

Defendant argues a variance occurred because the indictment charged a conspiracy lasting from 2000 to 2009, but he withdrew from the conspiracy upon his arrest in May 2007. Our precedent, however, leaves no room for this argument. Each member of a conspiracy is legally responsible for the crimes of his fellow conspirators "until the conspiracy accomplishes its goals or that conspirator withdraws." United States v. Randall, 661 F.3d 1291, 1294 (10th Cir. 2011) (quoting United States v. Brewer, 983 F.2d 181, 185 (10th Cir. 1993)). "In order to withdraw from a conspiracy an individual must take affirmative action, either by reporting to the authorities or by communicating

his intentions to the coconspirators." Randall, 661 F.3d at 1294 (quoting United States v. Powell, 982 F.2d 1422, 1435 (10th Cir. 1992)). Defendant bears the burden of proving a variance occurred.[1] United States v. Sells, 477 F.3d 1226, 1237 (10th Cir. 2007). Because he has not pointed to any affirmative acts by which he withdrew from the conspiracy, the law treats him as a member of the conspiracy even after his arrest.

B.

Next, Defendant claims a variance existed between the quantity of marijuana charged—more than 1,000 kilograms—and the quantity proven at trial. He believes he is only responsible for the marijuana and cash seized in the Avondale stash house. Defendant's argument overlooks the hornbook law that a conspirator is "legally responsible for the reasonably foreseeable crimes of fellow conspirators committed in furtherance of the conspiracy." United States v. Wardell, 591 F.3d 1279, 1291 (10th Cir. 2009) (citing Pinkerton v. United States, 328 U.S. 640, 647 (1946)). The evidence was more than adequate to show the conspiracy trafficked over 1,000 kilograms of marijuana. The 630 pounds seized at the time of Defendant's arrest equates to 285 kilograms. Police also found $223,000 in cash inside the Avondale house, and seized $139,980 in the Oklahoma panhandle in November 2007 and $366,040 at a Las Vegas, Nevada, UPS store in February 2008. Devon Thomas testified that the conspiracy was selling

---

[1] He would also bear the burden of proving his withdrawal if he had invoked it as an affirmative defense. Smith v. United States, 133 S. Ct. 714, 720 (2013).

marijuana for about $425 in profit per pound.[2]  ROA, vol. II at 159–60.  So these cash seizures represent profits from 1715 pounds of marijuana, or 777 kilograms.  Add to these seizures the 200 pounds (roughly 90 kilograms) of marijuana seized at the Kansas City, Kansas, UPS distribution facility in June 2009, and we have 1,152 kilograms.

Of course, Devon Thomas also testified that the conspiracy shipped about 300 pounds of marijuana twice a month once it resumed business "a month or two" after Defendant's arrest in May 2007.  ROA, vol. II at 148.  At this rate, it would have taken the conspiracy about eight months to traffic over 1,000 kilograms of marijuana.  But the conspiracy continued in operation until November 2009, meaning it easily trafficked that amount.  So the facts introduced at trial did not vary from the charged drug quantity.

III.

We turn now to Defendant's sufficiency argument.  "We review sufficiency-of-the-evidence challenges de novo, considering both direct and circumstantial evidence, and all reasonable inferences therefrom, in the light most favorable to the government."  Acosta-Gallardo, 656 F.3d at 1123 (internal quotation marks and brackets omitted).  We will reverse on sufficiency of the evidence grounds only if "no rational jury could have found each element of the crime beyond a reasonable doubt."  United States v. Parada,

---

[2] The Government argues the profit per pound was "at most" $500.  Appellee's Br. at 46.  But Devon Thomas testified he *started* purchasing the marijuana for $575 per pound, and that "[a]fterwards" the purchase price dropped to "505, 510, 515" with a very rare purchase under $500.  ROA, vol. II at 159.  He then testified that the conspiracy sold the marijuana in Kansas City, Missouri, for $1,000 per pound "at first" and "[t]hen we came down to like 950 to 900."  Id. at 160.  Although we review this evidence in the light most favorable to the Government, Acosta-Gallardo, 656 F.3d at 1116, we are hesitant to assume a profit of $500 per pound, because the resale price in Missouri apparently went down as the purchase price in Arizona decreased.

577 F.3d 1275, 1283 (10th Cir. 2009). To prove a defendant was part of a drug-trafficking conspiracy under 18 U.S.C. § 841, the Government must show: "(1) two or more persons agreed to violate the law; (2) the defendant knew the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; and (4) the alleged coconspirators were interdependent." United States v. Yehling, 456 F.3d 1236, 1240 (10th Cir. 2006).

Here, the jury heard the following evidence linking Defendant to the marijuana trafficking conspiracy. Police arrested Defendant in the Avondale house, which contained about $223,000 in cash and a vehicle loaded with 630 pounds of marijuana. The marijuana was packed with glue and grease, and Defendant had grease stains on his shirt at his arrest. The jury heard testimony that the conspiracy used this house to package marijuana that it then shipped to Kansas City, Missouri. It also heard testimony that the conspirators usually drove to Phoenix and returned to Kansas City by air, frequently flying through Las Vegas. Airline records showed Defendant flew from Kansas City to Las Vegas on March 24, 2007, in company with Rhone and the conspiracy's ringleader, Pitter. On March 27, 2007, Defendant flew from Las Vegas to Kansas City in company with six members of the conspiracy, and on April 10, 2007, he made the same flight in company with three other conspirators. After Defendant's arrest, Pitter put money in his jail account and tried to hire an attorney for him. Finally, Devon Thomas testified that Defendant "was a part of the organization." ROA, vol. II at 1166. This evidence was sufficient for a reasonable jury to find that Defendant was involved in the drug trafficking conspiracy.

Defendant argues this evidence was insufficient for two reasons. First, he argues that after he withdrew from the conspiracy, Pitter and Thomas established a "new conspiracy." Defendant did not raise this argument in his Rule 29 motion, so we review it only for plain error. United States v. Schene, 543 F.3d 627, 636 (10th Cir. 2008). Regardless of the standard of review, however, the jury heard sufficient information to conclude Defendant was part of a continuing conspiracy. Devon Thomas testified that, at the time of Defendant's arrest, "it was just one organization. One come and goes [sic]." ROA, vol. II at 1166. He then testified that after the arrests in Arizona, "[w]e actually took a break, like a month or two," and then the remaining members of the conspiracy resumed shipping marijuana. Id. at 1170–71. No evidence suggested that the conspiracy had different objectives when it resumed in mid-2007. So a jury could easily conclude that the same conspiracy continued even after some members were arrested. See United States v. Fishman, 645 F.3d 1175, 1190 (10th Cir. 2011) ("A single conspiracy does not splinter into multiple conspiracies because members come and go.").

Next, Defendant argues the Government failed to prove two elements of a conspiracy charge—that he knew the objectives of the conspiracy and that the conspirators were interdependent. In doing so, he overlooks the evidence presented to the jury. True, a defendant must have "at least a general awareness of both the scope and the objective of the conspiracy." Acosta-Gallardo, 656 F.3d at 1123. But he need not know "of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy." Id. Here, Defendant was in a house with a large amount of drugs packaged for shipment and a large amount of cash. The conspiracy's ringleader

- 8 -

had been in the house just hours before Defendant's arrest. The grease on Defendant's clothing suggested that he helped package the marijuana in an attempt to suppress the smell. And he had traveled from Las Vegas to Kansas City twice with members of the conspiracy. A jury could infer that Defendant knew the conspiracy's goal of packaging and shipping marijuana from Phoenix to Kansas City, Missouri.

The evidence was also sufficient to show interdependence. "Interdependence exists where each co-conspirator's activities constituted essential and integral steps toward the realization of a common, illicit goal." United States v. Foy, 641 F.3d 455, 465 (10th Cir. 2011) (quoting United States v. Edwards, 69 F.3d 419, 431 (10th Cir. 1995)). That is, the defendant must have "facilitated the endeavors of other alleged co-conspirators or facilitated the venture as a whole." Acosta-Gallardo, 656 F.3d at 1124 (quoting United States v. Heckard, 238 F.3d 1222, 1230 (10th Cir. 2001)). Defendant facilitated the drug trafficking conspiracy by helping package the marijuana. Devon Thomas described him as one of the "guys who were there working for us" in Arizona. ROA, vol. II at 1163. So the evidence was sufficient to convict Defendant of conspiracy.[3]

## IV.

Defendant argues the Government failed to prove venue was proper in the District of Kansas. He preserved this argument below in a motion under Federal Rule of

---

[3] Defendant also incorporates by reference pursuant to Federal Rule of Appellate Procedure 28(i) the argument set forth at pages 19–28 of the Appellant's Brief in United States v. Samora McIntosh, case number 11-3333. We address those arguments in section II-B of our opinion in that case.

Criminal Procedure 29. Article III of the Constitution requires the trial of all crimes to be held "in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. See also U.S. Const. amend. VI. Echoing the constitutional command, Federal Rule of Criminal Procedure 18 directs that venue is proper "in a district where the offense was committed." When the crime charged is conspiracy, "venue as to prosecution of all members of the conspiracy lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators." Foy, 641 F.3d at 466 (quoting United States v. Rinke, 778 F.2d 581, 584 (10th Cir. 1985)). The Government need only prove venue by a preponderance of the evidence. Acosta-Gallardo, 656 F.3d at 1118.

In this case, the properly-instructed jury found venue to lie in the United States District Court for the District of Kansas. Defendant has not challenged the jury instructions, but only the adequacy of the evidence supporting venue. In reviewing a jury's decision that venue lies in a particular district, we "view the evidence in the light most favorable to the government and make all reasonable inferences and credibility choices in favor of the finder of fact." Id. (brackets omitted) (quoting United States v. Kelly, 535 F.3d 1229, 1232 (10th Cir. 2008)).

The Government proposes several bases on which the jury could have rested its venue finding. First, the Government argues the jury reasonably could have found venue to lie in Kansas based on the seizure of eight boxes of marijuana in the UPS facility in Kansas City, Kansas. But although the conspirators certainly shipped the boxes through Kansas, the mere presence of the boxes in Kansas is hardly an "overt act." Pitter

- 10 -

committed an overt act in furtherance of the conspiracy when he shipped the packages from the UPS store in Mesa, Arizona. But UPS's transportation of the boxes through Kansas, even if foreseeable, was not an act committed by any of the conspirators. If this were a sufficient basis for venue, the Government could have brought the prosecution in any judicial district through which marijuana shipments passed. For this specific shipment, those districts might have included the District of New Mexico, the Western and Northern Districts of Oklahoma, and the Northern District of Texas. The boxes may have even traveled through a UPS hub in another district, such as the District of Colorado. The record also shows the conspirators shipped marijuana from Arizona to Florida and Tennessee. So under the Government's theory, venue might lie in any number of judicial districts in the southern United States simply because UPS shipments traveled through those districts. The Government has not cited, nor have we found, any authority for stretching the rules of venue so far.

The Government also argues the closing of the Oldham Road residence sale at a title company in Kansas is sufficient to establish venue. The Oldham Road purchase was relevant to the money laundering charges, but Defendant was only convicted for conspiracy to possess marijuana with intent to distribute. Nothing in the record suggests that the purchase of the Oldham Road residence was an act in furtherance of the marijuana-trafficking conspiracy.

Ultimately, we need not decide whether these first two theories are sufficient to support the jury's finding of venue. The jury heard other evidence from which it could conclude by a preponderance of the evidence that the conspirators committed acts in

furtherance of the conspiracy in the District of Kansas. Tamary Brown testified that she, Gladstone McDowell, and Marlon Forrester would drive or take a bus from Kansas City, Missouri, to Arizona with the money to buy more marijuana. Furthermore, the jury heard that police stopped a vehicle carrying Gladstone McDowell and nearly $140,000 in cash on Highway 54 in the Oklahoma panhandle. The vehicle bore Missouri license plates and was westbound. Jurors could easily conclude based on these pieces of evidence that multiple members of the conspiracy drove through Kansas in order to return cash to Arizona. Driving a vehicle and carrying cash are both overt acts. See United States v. Record, 873 F.2d 1363, 1370 (10th Cir. 1989) (approving jury instruction that said an overt act for venue purposes "may be as innocent as the act of a man walking across the street, or driving an automobile, or using a telephone"). See also United States v. Bailon-Santana, 429 F.3d 1258, 1262 (9th Cir. 2005) (driving a car); United States v. Fernandez, 559 F.3d 303, 327 (5th Cir. 2009) (loading cash into a truck). So the jury reasonably could infer the conspirators committed overt acts in furtherance of the conspiracy in the District of Kansas. Consequently, we cannot disturb its finding that venue was proper in that district.

Defendant argues venue for his prosecution was improper in Kansas because he withdrew from the conspiracy upon his arrest in May 2007. This is simply a restatement of his sufficiency argument, which we rejected above. Because Defendant is legally responsible for all foreseeable acts in furtherance of the conspiracy, even after his arrest, venue for his trial was proper in the District of Kansas. See Foy, 641 F.3d at 466.

V.

Defendant next asserts the search warrant for the Avondale house was unsupported by probable cause. He does not spell out the argument himself, however, but incorporates by reference the arguments set forth at pages 11–22 of the Appellant's Brief in United States v. Sheldon McIntosh, No. 11-3331. See Fed. R. App. P. 28(i). We will employ a similar time-saving device and incorporate by reference section II of our opinion in United States v. Sheldon McIntosh, No. 11-3331 (10th Cir. 2013). For the reasons set forth in that opinion, probable cause supported the warrant.

VI.

Defendant's final claim on appeal is that the Government violated the Interstate Agreement on Detainers (IAD). He incorporates by reference the briefs of two of his co-defendants—pages 28–33 of the Appellant's Brief in United States v. Sheldon McIntosh, No. 11-3331 and pages 40–44 of the Appellant's Brief in United States v. Samora McIntosh, No. 11-3333. We addressed those arguments in full in sections IV and VI of our opinions in those respective cases. We need only note that the Government's argument in this case that the IAD does not apply to Defendant rests on its mistaken assumption Defendant had no detainer lodged against him. See Appellee's Br. at 59–60. But an Arizona corrections officer testified that Defendant had a "detainer to the U.S. Marshal's Office." ROA, vol. II at 541. So the IAD *does* apply to Defendant, but he is not entitled to relief under the IAD for the reasons set forth in our opinions in the above-mentioned cases.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge